23351

SEABROOK ISLAND PROPERTY OWNERS ASSOCIATION, Appellant
v. SOUTH CAROLINA PUBLIC SERVICE COMMISSION and Utilities Services, Inc., Respondents.

(401 S.E. (2d) 672)

Supreme Court

---

*Michael A. Molony* and *Stephen P. Groves, Young, Clement, Rivers & Tisdale,* Charleston, *for appellant.*

*Marsha A. Ward, Gen. Counsel of S.C. Public Service Com'n,* Columbia, *for respondent SCPSC.*

*Mitchell M. Willoughby* and *John M.S. Hoefer, Law Offices of Mitchell M. Willoughby,* Columbia, *for respondent Utilities Services, Inc.*

Heard Jan. 10, 1991.

Decided Feb. 25, 1991.

FINNEY, Justice:

Appellant Seabrook Island Property Owners Association (Seabrook) appeals the circuit court order affirming Respondent South Carolina Public Service Commission's (PSC) decision to approve certain utility rates and charges. We affirm.

This matter involves an application by Respondent Utilities Services, Inc. (USI), to the PSC for approval of an increase in rates and charges for water and sewer services to customers

in the Charleston County service area. Seabrook filed a Petition to Intervene and Protest the application. The petition was granted, and thereafter Seabrook filed a motion to dismiss the rate increase application. The PSC denied Seabrook's motion.

A hearing was held on December 9, 1987, before a three-member panel of the PSC pursuant to S.C. Code Ann. § 58-3-95 (1976 & Cum. Supp. 1988). A public hearing was held on Johns Island January 14, 1988.

In its order issued February 1, 1988, the PSC denied any increase based upon the rate schedule first filed by USI, but approved adjustments which resulted in an increase of rates and charges at a level lower than proposed by USI. On February 23, 1988, Seabrook filed a Petition for Rehearing, which was denied by the PSC. Respondents did not seek a rehearing.

Seabrook filed a Summons and Petition for Judicial Review, naming only the PSC as respondent. USI filed a Motion to Intervene, which the circuit court granted. After a hearing, the circuit court issued its order on November 11, 1988, affirming the orders of the PSC.

First, Seabrook asserts that the PSC's order did not set forth findings of fact and conclusions of law as required by S.C. Code Ann. § 1-23-350 (1986). We disagree.

The PSC is generally given a wide range of discretion in utility rate cases; however, that discretion cannot be exercised without a factual basis to support the commission's decision. *See* S.C. Code Ann. § 1-23-350 (1986);[1] *Hamm v. South Carolina Public Service Com'n*, 298 S.C. 309, 380 S.E. (2d) 428 (1989); *Hamm v. South Carolina Public Service Com'n*, 295 S.C. 429, 368 S.E. (2d) 911 (1988); *Parker v. South Carolina Public Service Com'n*, 280 S.C. 310, 313 S.E. (2d) 290 (1984).

We recognize that the PSC has been designated the "expert" to regulate the rates and services of public utilities operating in South Carolina. *Patton v. South Carolina Public Service Com'n*, 280 S.C. 288, 312 S.E. (2d)

---

[1] Section 1-23-350 of the Code of Laws of South Carolina (1976) provides in pertinent part: "A final decision shall include findings of fact and conclusions of law separately stated." Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting such findings.

257 (1984). "Expert status, however, does not somehow diminish the PSC's duty to support its conclusions with factual findings; indeed, that status heightens the duty to make the explicit findings of fact which allow meaningful appellate review of these complex issues." *Hamm*, 298 S.C. at 312, 380 S.E. (2d) at 430. However, no particular format for setting forth such findings is required nor is it necessary that findings of facts and conclusions of law be stated or enumerated under separate headings. *Airco, Inc. v. Hollington*, 269 S.C. 152, 236 S.E. (2d) 804 (1977).

In examining the revenue and expense information presented by USI in support of its application, clearly the PSC considered testimony of both USI and Seabrook as well as that of the PSC staff. We find eleven instances in Order No. 88-126 where the PSC made specific findings, many of which were adverse to the position of USI, based upon the report of the PSC staff and testimony of the staff witness. In each paragraph of Section V of its order, the PSC considered certain revenue and expense figures presented by USI in light of recommendations made by the PSC staff witness and/or Seabrook's witness. Based upon that evidence and testimony, the PSC made adjustments to the revenue and expense figures which would be considered in ruling upon USI's application. We find that the PSC's order demonstrates a fixed correlation between its findings and its conclusions. Therefore, this Court holds that the PSC's order did include findings of fact and appropriate conclusions of law to support its decision to grant a rate increase.

Seabrook next alleges the PSC erred in denying Seabrook's Motion to Dismiss USI's application on the basis that USI violated the statutory time parameter provisions of S.C. Code Ann. § 58-5-240(F) (Cum. Supp. 1987) by "amending" its application.[2] Section 58-5-240(F) provides:

After the date the *schedule* is filed with the Commission, no further rate change request under this section may be filed until twelve months have elapsed from the date of the filing of the schedule; provided, however, this section shall not apply to a request for a rate reduction. (Emphasis added.)

---

[2] Seabrook cites § 58-5-240(G). The applicable section is § 58-5-240(F).

The alleged "amendment" by USI was not a change in the proposed rate schedules; USI merely revised its financial and accounting exhibits. We hold that the circuit court did not err in denying the Motion to Dismiss since the rate schedules proposed by USI were the same as initially filed with the PSC and noticed to the public.

Seabrook asserts further that the PSC erroneously established an operating margin of 16.37% for USI.

Seabrook contends the only evidence in the record as to a fair operating margin is 2.3% offered by Seabrook because that was USI's currently approved operating margin. This Court was held that the determination of a fair operating margin is peculiarly within the province of the PSC and cannot be set aside in the absence of a showing that it is unsupported by the substantial evidence in the record. *Patton*, 280 S.C. at 292, 312 S.E. (2d) at 259. Moreover, the PSC is not bound to base its decision on an application for rate relief on a utility's financial circumstances and conditions at the time a prior schedule of rates and charges was approved.

Here, the PSC chose a most recent "test year," namely 1986, to review USI's revenues and expenses in determining the amount of additional revenues USI would need to maintain sufficient earnings. USI submitted substantial financial statements for an historic test-year (1986), *pro forma*, as its then-approved rates, as well as on a prospective basis for the financial condition it expected to experience had the application, as made, been granted. Additionally, USI submitted exhibits demonstrating the investment associated with the water and sewer plant and facilities.

The PSC's order reflects consideration of the standards delineated in *Bluefield Water Works & Improving Co. v. Public Service Commission of State of West Virginia*, 262 U.S. 679, 43 S. Ct. 675, 67 L. Ed. 1176 (1923), and balances the respective interests of the company and the consumer. The PSC noted that among the factors it considered were the revenue requirements for USI, the proposed price for which USI's service is rendered, the quality of such service, and the effect of the proposal upon the consumer. We hold that there is substantial evidence in this record to support the PSC's determination.

Seabrook also alleges error by the PSC in finding that USI was entitled to depreciation expense. It is within the PSC's statutorily delegated power to determine the amount of an expense that will be charged to the ratepayers. *Patton,* 280 S.C. at 292, 312 S.E. (2d) at 259. Depreciation is an expense the ratepayers would have to bear under any ratemaking methodology. The PSC heard testimony from both USI and the PSC staff concerning the requested depreciation expenses. The staff recommended that depreciation expenses be allowed only if no rent expense was recognized for ratemaking purposes. The PSC accepted the staff's recommendation in considering the cost to USI of having available facilities used and useful in its business. We do not find error in the PSC's decision to allow depreciation expense.

Finally, Seabrook argues that the single-family equivalent rate schedule approved by the PSC for use by USI is not supported by any evidence in the record.

It is incumbent upon the PSC to approve rates which are just and reasonable, not only producing revenues and an operating margin within a reasonable range, but which also distribute fairly the revenue requirements, considering the price at which the company's service is rendered and the quality of that service. *See* S.C. Code Ann. § 58-5-290 (1976). The PSC determined a just and reasonable level of return and then computed the total amount of revenue USI should earn based upon its investment, its operating cost, and the approved rate of return. Subsequently, the PSC found that the rates approved fairly and equitably distributed the cost of operating USI among its customers. We find substantial evidence in this record to support the rate schedule approved by the PSC.

For the foregoing reasons, this case is affirmed.

Affirmed.

GREGORY, C.J., HARWELL and CHANDLER, JJ., and BRUCE LITTLEJOHN, Acting Associate Justice, concur.