### 23707

Steven W. HAMM, Consumer Advocate for the State of South Carolina, Appellant v. SOUTH CAROLINA PUBLIC SERVICE COMMISSION and Wild Dunes Utilities, Inc., Respondents.

(422 S.E. (2d) 118)

Supreme Court

*Steven W. Hamm, Raymon E. Lark, Jr.* and *Carl F. McIntosh,* all of *S.C. Dept. of Consumer Affairs,* Columbia, *for appellant.*

*Marsha A. Ward* and *F. David Butler,* Columbia, *for respondent South Carolina Public Service Com'n.*

*Rex L. Carter,* of *Carter, Smith, Merriam, Rogers and Traxler,* Greenville, and *Mitchell Willoughby* and *B. Craig Collins,* both of *Willoughby & Hoefer, P.A.,* Columbia, *for respondent Wild Dunes Utilities, Inc.*

Heard May 4, 1992.

Decided Aug. 31, 1992.

HARWELL, Chief Justice:

This is an appeal from an order issued by respondent South Carolina Public Service Commission (PSC) granting respondent Wild Dunes Utilities, Inc. (Wild Dunes) an increase in water and sewerage rates. Appellant Steven W. Hamm, Consumer Advocate for the State of South Carolina (Consumer Advocate), alleges that the trial judge erred in upholding the PSC's order. We affirm.

## I. FACTS

Wild Dunes operates a water and sewerage service facility in the Wild Dunes resort area on the Isle of Palms. In January 1990, three months after Hurricane Hugo demolished much of the Isle of Palms and temporarily wiped out one-third of Wild Dunes' customer base,[1] Wild Dunes applied to the PSC for ap-

---

[1] Wild Dunes' consumers were without service for twenty days. Of the 1,500 customers served by Wild Dunes, 527 owned property so extensively damaged by Hurricane Hugo that water and/or sewer service had to be discontinued. As of the date of the hearing, only 56 of those 527 customers had service resumed. Wild Dunes projected that the remaining 471 customers would have service restored by January 1991.

proval of a new schedule of rates and charges. The Consumer Advocate was granted leave to intervene and contested Wild Dunes' application on a variety of grounds. After a hearing on May 9, 1990, the PSC granted Wild Dunes an increase of $294,648 in rates, approved an increase in its operating margin from 9.46% to 26.79%, and granted Wild Dunes permission to begin collecting from each new customer a plant impact fee of $700 for water and sewer service. The Consumer Advocate petitioned for rehearing and then for judicial review.[2] The trial judge denied the relief sought by the Consumer Advocate.

## II. DISCUSSION

An appeal from an order issued by the PSC is governed by the provisions of the South Carolina Administrative Procedures Act. *Hamm v. American Telephone and Telegraph Co.*, 302 S.C. 210, 213, 394 S.E. (2d) 842, 844 (1990). This Court must sustain the PSC's decision if there is substantial evidence to support it. *Id.* The PSC's order is presumed to be valid and reasonable, and it has the force and effect of law. *Id* at 214, 394 S.E. (2d) at 844. This Court is precluded from substituting its judgment for that of the PSC upon a question as to which there is room for a difference of intelligent opinion. *Id.* Rather, the Consumer Advocate must prove convincingly to this Court that the PSC's order is unsupported by the evidence or that it embodies arbitrary or capricious action as a matter of law. *Id.* at 213, 394 S.E. (2d) at 844.

The Consumer Advocate first asserts that Wild Dunes should not be allowed to recover lost revenues as an operation and maintenance cost but instead should adjust its reported revenues to reflect the revenues it did not realize because it temporarily was unable to serve its customers after Hurricane Hugo. We disagree.

The Consumer Advocate does not contest that Wild Dunes should be allowed to recover the expenses it incurred repairing the damage inflicted by Hurricane

---

[2] The PSC originally approved an operating margin of 26.92%. However, on rehearing the PSC lowered the operating margin to 26.79% based on its crediting Wild Dunes with expenses it avoided as a result of its customers being offline, such as mailing costs for bills. These credits reduced Wild Dunes' lost revenues by $5,513.

Hugo. The controversy centers around Wild Dunes' request to recoup lost revenues as one of these expenses. Wild Dunes estimated that it lost revenues of $221,000 during the period it could not provide service because its plant and many of its customers' homes had been damaged extensively.[3] Wild Dunes proposed that it be permitted to include these lost revenues in the expenses it sustained restoring water and sewer service, amortized over a five year period. The PSC agreed and directed that the $221,000 be charged against Wild Dunes' operation and maintenance account. The Consumer Advocate contends that lost revenues are not an expense Wild Dunes sustained in restoring service, and more properly should be reflected in a reduction of Wild Dunes' revenues for 1989 and 1990. Consequently, according to the Consumer Advocate, the PSC did not base its decision to charge lost revenues as an expense on substantial evidence.

A Wild Dunes representative acknowledged that no accounting principle supported Wild Dunes' request to charge lost revenues as an expense. However, the representative also testified that if Wild Dunes were to adjust revenues to the level of customers on-line at the time of filing, those customers would bear a disproportionate share of the expenses Wild Dunes sought to recover. He testified that the approach advocated by Wild Dunes—charging the lost revenues as an expense—allowed Wild Dunes to recover its costs over a longer period of time from a broader group of customers, so that Wild Dunes' customers would not experience "rate shock."

We have defined "substantial evidence" to mean " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' . . . This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 135-36, 276 S.E. (2d) 304, 307 (1981). Where reasonable minds might differ, the PSC's decision may not be set aside. *Id.* at 136, 276

---

[3] Wild Dunes calculated lost revenues of $163,000 based on income it would have received had all the customers who had been on-line during the test year preceding Hurricane Hugo been on-line through the date of the PSC decision. Wild Dunes also projected an additional $58,000 in losses accruing after the date of the PSC decision.

S.E. (2d) at 307. Although the PSC's decision to allocate lost revenues as an operating and maintenance expense is unusual, we discern that, given the unique situation Wild Dunes experienced after Hurricane Hugo, the evidence reasonably supports the conclusion reached by the PSC. Accordingly, we find that the trial judge did not err in affirming the PSC's order allowing Wild Dunes to recover lost revenues.

The Consumer Advocate next contends that the PSC failed to set forth sufficient findings of fact to support its decision to allow Wild Dunes to charge plant impact fees, and that the proposed plant impact fees were not based on substantial evidence. We disagree.

Wild Dunes requested a restructuring of its water and sewer connection and water tap fees for residential and commercial customers after it made capital expenditures of $1,363,066 to upgrade its water operations and $1,195,738 to upgrade its sewer operations. Wild Dunes proposed that it be allowed to collect a plant impact fee of $700 per single family equivalent unit from new residential and commercial customers. The PSC found that the plant impact fee was appropriate because the capital expenditures previously made by Wild Dunes had enabled Wild Dunes to develop sufficient capacity to serve new customers.

An administrative body must make findings which are sufficiently detailed to enable this Court to determine whether the findings are supported by the evidence and whether the law has been applied properly to those findings. *Hamm v. Southern Bell Telephone and Telegraph Co.,* 302 S.C. 132, 394 S.E. (2d) 311 (1990), *cert. denied,* — U.S. — , 111 S.Ct. 1018, 112 L.Ed. (2d) 1099 (1991). The Consumer Advocate contends that the PSC should have quantified the amount of existing plant capacity attributable to each customer, specified how the fees would be utilized, and established the reasonableness of the amount of proposed fee based on evidence in the record.

Although the PSC's original order disposes of its reasons for granting the plant impact fees in a somewhat summary fashion, its order on rehearing elaborates on the appropriateness of the plant impact fees requested by Wild Dunes. The PSC initially noted that the purpose of a plant impact fee is to allow a utility to recover a portion of the capital

investment made by the utility in providing the capacity needed to serve a single family equivalent unit. The PSC determined that Wild Dunes would need in excess of 1,700 new taps at $700 per tap to recover investments it already had made in its sewer services plant, and in excess of 1,900 taps at $700 per tap to recover investments it already had made in its water services plant. However, Wild Dunes presented data showing that its annual growth rates for water and sewer customers were only 2.08% and 1.52%, respectively. The PSC concluded that the plant impact fees would be insufficient to allow Wild Dunes to recover the investment it had already made in improvements. The PSC also determined that the plant impact fee would reduce Wild Dunes' rate base, and, consequently, lower Wild Dunes' overall cost of operation and rate of return. Based on this evidence, the PSC found that the plant impact fees were provable by known and measurable figures supplied by Wild Dunes regarding current investments made in plant and facilities used and useful in providing services, and that, compared to the total investment already made by Wild Dunes, the plant impact fee was fair and reasonable.

We discern that the findings articulated in the PSC's order on rehearing are sufficient to allow us to determine that they are supported by the evidence, and that there is substantial evidence in the record to support the findings. Accordingly, we conclude that the trial judge did not err in determining that the PSC had set forth sufficient findings of fact, based on substantial evidence, to support its decision allowing Wild Dunes to charge a plant impact fee.

The Consumer Advocate next urges that the PSC failed to set forth sufficient findings of fact to support its decision to allow Wild Dunes a 26.79% operating margin, and that the decision was not based on substantial evidence. We disagree.

The PSC discerned that, because Wild Dunes is a small, undiversified company with a small income base, the operating margin approach was an appropriate guide for determining reasonable rates and charges. It also noted that the operating margin methodology is particularly useful when a utility's rate base has been substantially reduced by customer donations, tap fees, contributions in aid of construction, and book value in excess of investment. Therefore, the PSC opted to apply the operating margin approach using the following figures:

| | |
|---|---|
| Operating Revenues: | $903,035 |
| Operating Expenses: | 532,265 |
| Net Operating Income: | $ 70,770 |
| Add: Customer Growth | 6,674 |
| Total Income for Return: | $377,444 |
| Operating Margin (after interest): | 26.79% |

In reaching this percentage, the PSC reviewed Wild Dunes' revenue requirements, the proposed prices for which the services would be rendered, the quality of the service, and the effect of the proposed prices upon Wild Dunes' customers. As to Wild Dunes' revenue requirements, the PSC discerned that Wild Dunes is a small, undiversified utility with a smaller revenue base than comparable utilities. Further, a representative of Wild Dunes testified that it had purchased the utility from the developer of Wild Dunes. According to the representative, the original operating margin was artificially low because at the time it was set, the utility was in place solely to make the development marketable. Thus, the developer did not seek to earn a return on his utility investment, but simply desired to recover his costs of constructing and maintaining the utility.

As to quality of service, the PSC reviewed testimony of Wild Dunes' representative and its own staff information regarding the few number of customer complaints it had received regarding Wild Dunes' operations. In addition, the PSC considered the fact that Wild Dunes had expended approximately $675,000 to upgrade and refurbish its plant, and also relocated its office to the Isle of Palms to improve customer service.

As to the effect of the proposed price on customers, the PSC found that the increased rates were reasonable because the Wild Dunes development is a resort community consisting mostly of second residences which are occupied only periodically. In addition, the PSC noted that it had received only five letters opposing a rate increase.

The PSC determined that an increase in operating margin from 9.46% to 26.79% provided Wild Dunes with sufficient income to attract investors so that it would be able to continue to upgrade its plant and services. We find that the PSC properly attempted to balance the in-

terests of Wild Dunes in earning a return on its investment with the interests of Wild Dunes' ratepayers in receiving adequate service at a fair and reasonable price. The determination of a fair operating margin is peculiarly within the province of the PSC. *Seabrook Island Property Owners Association v. South Carolina Public Service Commission,* 303 S.C. 493, 401 S.E. (2d) 672 (1991).

The Consumer Advocate also contends that, because ▮ the operating margin established by the PSC provided for recovery of current and future investments, the PSC's allowance of plant impact fees allowed Wild Dunes a double recovery. According to the Consumer Advocate, the operating margin methodology utilized by the PSC has no relation to Wild Dunes' rate base, and thus recovery of current and future investments in the operating margin is duplicative.

As discussed above, the PSC discerned that plant impact fees would lower Wild Dunes' overall cost of operation and reduce the operating margin. In light of the fact that Wild Dunes will be able to recover very little of its capital investments through plant impact fees, we discern that, at most, the PSC provided Wild Dunes the opportunity to recover a portion of its capital investments[4] through plant impact fees, and a portion through the operating margin. The Consumer Advocate does not specify any evidence demonstrating that the PSC did not take plant impact fees into consideration when it estimated Wild Dunes' operating expenses. We conclude that the Consumer Advocate has not met his burden of convincing this Court that the PSC allowed Wild Dunes a double recovery, and thus made a decision not supported by substantial evidence. Accordingly, we find that the trial judge did not err in affirming the PSC's decision to raise Wild Dunes' operating margin from 9.46% to 26.79%.

The order of the trial judge denying judicial review of the PSC orders is

Affirmed.

CHANDLER and FINNEY, JJ., and GEORGE T. GREGORY, JR. and JASPER M. CURETON, Acting Associate Justices, concur.

---

[4] It also appears that, in addition to improvements Wild Dunes already had made, the utility anticipated additional expenditures to install a reverse osmosis system to correct a fluoride problem in the water.