### 23983

NUCOR STEEL, A DIVISION OF NUCOR CORPORATION, Appellant/ Respondent v. SOUTH CAROLINA PUBLIC SERVICE COMMISSION; South Carolina Pipeline Corporation; South Carolina Consumer Advocate; the City Orangeburg; Lancaster County Natural Gas Authority; Peoples Natural Gas Company of South Carolina; South Carolina Electric & Gas Co.; South Carolina Energy Users Committee (SCEUC); and Westvaco Corporation, of whom South Carolina Public Service Commission and South Carolina Pipeline Corporation are, Respondents/Appellants. Ex parte NUCOR STEEL, A DIVISION OF NUCOR CORPORATION, Respondent. In Re SOUTH CAROLINA ENERGY USERS COMMITTEE, Respondent v. SOUTH CAROLINA PUBLIC SERVICE COMMISSION and South Carolina Pipeline Corporation, Appellants.

(439 S.E. (2d) 270)

Supreme Court

*Garrett A. Stone* and *Stephen J. Karina* both of *Brickfield, Burchette & Ritts, P.C.,* Washington, DC, and *Duncan S. McIntosh* of *Quinn, Arndt, Patterson & McIntosh,* Columbia, *for Nucor Steel.*

*H. Thomas Arthur* and *James B. Richardson, Jr.,* Columbia, *for South Carolina Pipeline Corp.*

*F. David Butler* and *Gayle B. Nichols,* Columbia, *for Public Service Comm's of South Carolina*

*Arthur G. Fusco* and *B. Michael Brackett* of *Sherrill & Rogers,* Columbia, *for South Carolina Energy Users Committee.*

Heard Oct. 19, 1993.

Decided Jan 10, 1994.

Reh. Den. Feb. 3, 1994.

TOAL, Justice:

This consolidated appeal originally arose as separate appeals and cross appeals from two different circuit courts' reviews and reversals of Public Service Commission Orders Number 90-729 and 90-1010. The Public Service Commission orders, which were each issued as a results of PSC Docket Number 90-204-G, approved a reduction in gas rates for South Carolina Pipeline's sale-for-resale customers. We REVERSE both circuit courts and reinstate the Public Service Commission's orders.

## FACTS

The facts of both cases are essentially the same. In March 1990, South Carolina Pipeline Corporation (hereinafter Pipeline) filed an application with the South Carolina Public Service Commission (hereinafter PSC) to reduce the rates at which Pipeline sells natural gas to its sale-for-resales customers. This application was a direct result of negotiated settlement between Pipeline and the South Carolina Consumer Advocate in an earlier PSC docket.[1] In response to the agreement and application, the PSC opened Docket Number 90-204-G, and on March 27, 1990, the PSC granted interim approval of the proposed rate reduction.[2]

The South Carolina Energy Users Committee (hereinafter SCEUC), a consortium of certain industrial customers of

---

[1] PSC Docket Number 88-220-G.

[2] It should be noted that a portion of the customer rate base for Pipeline consists of consumers and sale-for resale customers who are subject to monopoly price controls. This concept is premised on the inability of the average consumer to shift fuel sources among the various fuels available on the market. Pipeline's industrial customers, however, have the flexibility to shift fuel types based on the lowest cost. The industrial market is characterized by interruptible service if the gas is required to a higher priority customer, and the ability to shift fuel types on any given day based on the price of fuel. Therefore, industrial customers, in a market analysis, enjoy the benefit of competition between fuel types rather than the monopolistic "one source" pricing of the average consumer.

Pipeline,[3] while not opposing the rate reduction to Pipeline's sale-for-resale customers, intervened asking the PSC to set the price of natural gas to industrial customers by the "cost-of-service" method. Nucor Steel[4] (hereinafter Nucor) filed a separate motion to intervene arguing that either the industrial rate issue should be addressed in a subsequent docket or that the current docket be continued to allow Nucor an opportunity to respond to the question.

The PSC held hearings on Pipeline's application on May 1, 2, and 3, 1990, and issued Order Number 90-729 on August 8,1990. Order Number 90-729, *inter alia,* approved the settlement between Pipeline and the Consumer Advocate, and reduced the natural gas rates for sale-for-resale customers. This same order also rejected SCEUC's request for a change in the method of setting prices for industrial gas customers; however, the PSC did establish a subsequent docket to consider the issue of industrial rates raised by Nucor and SCEUC.[5]

On September 19, 1990, SCEUC petitioned the PSC to reconsider and to stay the hearing on the industrial rate cap issue in the subsequent docket, while on September 24, 1990, Nucor also petitioned for reconsideration. The PSC, in Order Number 90-1010 dated October 17, 1990, denied SCEUC's and Nucor's petitions for reconsideration but granted the stay of the industrial rate cap hearing pending judicial review of PSC Order Number 90-729.

On February 25, 1991, in a circuit court non-jury term, Judge M. Duane Shuler heard arguments by Pipeline, PSC, SCEUC, and Nucor and issued an order on June 10, 1991. The order of the circuit court sustained SCEUC's appeal, denied Nucor's petition for intervention, and remanded the action for

---

[3] SCEUC is comprised of 16 of Pipeline's 116 industrial customers.

[4] Nucor is not a member of the SCEUC.

[5] The subsequent docket was established to allow the PSC to review the rate caps applicable to Pipeline's industrial customers. The issues raised by both Nucor and SCEUC all stem from the appropriate rate of return and the appropriate methodology for computing the price setting for industrial customers. Rate caps are considered as an appropriate vehicle for controlling the rate of return to the public utility, especially where a portion of the utility's customer base is subject to market pricing which another portion is subject to monopoly pricing. *See* J.G. Laitos & J.P. Tomain, *Energy and National Resources Law* 503 (1992); E. Gellhorn & R.J. Pierce, *Regulated Industries* 212 (1987); J.P. Tomain, *Energy Law* 179-181 (1981).

the PSC to set rates for the sale of gas to industrial customers based on a "cost of service" methodology.

On March 30, 1992, Nucor's appeal was heard during a non-jury term of circuit court before Judge Frank P. McGown, Jr. On April 24, 1992, Judge McGowan issued an order reversing the rates established by the PSC in "Docket No. 90-204-G" for Pipeline's industrial customers, and ordered the PSC, on remand, to establish rates for industrial customers after taking additional evidence only from Nucor. Judge McGowan, unlike Judge Shuler, opined that the PSC could set fixed rates for industrial customers, or could continue to allow negotiated prices subject to maximum caps so long as the method used resulted in a rate-of-return which was "just and reasonable."

In July 1991, Nucor appealed Judge McGowan's order, and Pipeline and the PSC cross appealed. Similarly in July 1991, both parties timely filed a notice of appeal from Judge Shuler's order which was held in abeyance pending the resolution of Nucor's separate appeal.[6] The two appeals were briefed and argued before us separately, but because the parties and issues are identical, both appeals can be consolidated.

## ISSUES

The relevant issues in both appeal are identical:

1. Whether the circuit court erred in holding that the PSC should have found Pipeline's industrial gas prices unreasonable, where the level of industrial rates was not before the PSC in Docket Number 90-204-G, and where the PSC opened a new docket to consider that issue; and

2. Whether the PSC is limited to "cost-of-service" methodology in ensuring just and reasonable rates for natural gas sold to industrial customers under S.C. Code Ann. §§ 58-5-240 et seq. (Supp. 1992).

## LAW/ANALYSIS

Judicial review, as outlined in the Administrative Procedures Act, S.C. Code Ann. §§ 1-23-380 (1986), is only appropriate where there is an appeal form a final order. S.C. Code Ann. §§ 1-23-380(a) provides:

---

[6] PSC Order number 90-729.

> (a) A party who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this Article 1. . . . A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

*Id.* The statute also provides that the appealing party must exhaust their administrative remedies before resorting to judicial review. *See also Charleston Television, Inc. v. S.C. Budget and Control Board*, 301 S.C. 468, 392 S.E. (2d) 671 (1990); *South Carolina Baptist Hosp. v. South Carolina Dept. of Health and Environmental Control*, 291 S.C. 267, 353 S.E. (2d) 277 (1987).

SCEUC and Nucor argue that the industrial rates were at issue in Docket Number 90-729, and that the PSC's failure to adopt a differing method of computing gas rates was, in effect, the final determination of industrial rates. At the outset, it should be remembered that the docket giving rise to Order Number 90-729 was opened to determine the appropriate rates for sale-for-resale customers, not industrial customers. Moreover, based on the complexity of the issues raised by the intervening parties at the hearing and the need for all interested parties to be heard, the PSC ordered that a subsequent docket be opened to resolve the industrial customers' complaints.

In fact, the order issued by the PSC specifically left the industrial rate question open for determination in the subsequent docket. Therefore, it appears that on the question of the industrial rate cap, there has been no final order on which an appeal can be based. The subsequent docket, which was delayed pending SCEUC's and Nucor's appeals, is still open and thus, the administrative remedy has not been exhausted. In the case at bar, both trial courts erred in addressing the industrial rate cap issues on appeal, and should be reversed.

The one industrial issue which SCEUC and Nucor argue is in final form is whether the PSC should be limited to "cost-of-service" methodology in ensuring just and reasonable rate for natural gas sold to industrial customers, pursuant to S.C. Code Ann. §§ 58-5-240, *et seq.* (Supp.

1992). S.C. Code Ann. § 58-5-240(H) provides:

> The commission's determination of a fair rate of return must be documented fully in its findings of fact and based exclusively on reliable, probative, and substantial evidence on the whole record. The commission shall specify an allowable operating margin in all water and wastewater orders.

*Id.*

In Order Number 90-729, the PSC found that Pipeline's industrial customers were a competitive market subject to negotiated rates rather than cost-of-service or monopolistic pricing. The PSC determined that it was not unjust or unreasonable to allow Pipeline to charge negotiated rates in the industrial market. Further, the PSC found that the negotiated rate structure for industrial customers had been utilized for many years to determine the price of natural gas for that market. Rather than addressing the question of caps on the negotiated pricing, the PSC created a new docket to determine the reasonableness of the negotiated rates as they now exist.

Nucor points to the rate-of-return that Pipeline currently receives as an indication that the current rates are unjust and unreasonable. Nucor asserts that the rate-of-return is so exorbitant that it should be held unjust and unreasonable as a matter of law. The fallacy in this argument is that this issue is preserved for a later docket where the PSC can properly answer the question. The PSC did not, in either Orders Number 90-719 or 90-1010, reject the use of rate-of-return as a basis for determining where the rate caps should be set. The PSC only rejected the "cost-of-service" formula as being the *exclusive* methodology for determining industrial rates.

The PSC can adjust the caps on industrial gas prices to achieve just and reasonable rates with a fair rate-of-return to Pipeline with or without specifically adopting a "cost-of-service" methodology. The statutory mandate set forth in S.C. Code Ann. § 58-5-240(H) only requires the PSC to determine a fair rate-of-return and document fully the evidence which justifies that rate-of-return. Nothing in the plain language of the statute requires the PSC to adopt any one particular price-setting methodology. *See Nucor Steel v. South Carolina Pub. Serv. Comm's*, — S.C. —, 426 S.E. (2d) 319 (1992) (where the

86

Court held that the PSC must accord a statute its clear meaning); *Helfrich v. Brasington Sand & Gravel Co.*, 268 S.C. 236, 233 S.E. (2d) 291 (1977).

Because these issue remain to be addressed in the docket opened by the PSC for the purpose of dealing with industrial customers, and because the parties have not exhausted their available administrative remedies, the circuit court erred in addressing the issues in the portion of this appeal which relates to industrial customer rates.

The original sale-for-resale rate docket was not opened to address industrial customer issues, therefore, we do not address the impact of the PSC's rulings on the new industrial rate docket. Nucor, SCEUC, as well as Pipeline's other industrial customers, still have an appropriate administrative forum which precludes judicial review on the industrial rate issues at this time.

Accordingly, both circuit courts are REVERSED and the PSC's Orders numbered 90-729 and 90-1010 are reinstated.

HARWELL, C.J., MOORE and FINNEY, JJ., and BRUCE LITTLEJOHN, Acting Associate Justice, concur.