478 S.E.2d 826

**HEATER OF SEABROOK, INC., Appellant,**

v.

**The PUBLIC SERVICE COMMISSION OF SOUTH CAR-OLINA, Town of Seabrook Island, and South Carolina Department of Consumer Affairs, Respondents.**

**No. 24473.**

Supreme Court of South Carolina.

Heard June 5, 1996.
Decided Aug. 12, 1996.
Rehearing Denied Sept. 6, 1996.

58

Darra W. Cothran, of Woodward, Cothran & Herndon, Columbia, for Appellant.

F. David Butler, Columbia, for Public Service Commission of South Carolina; Elliott F. Elam, Jr., Columbia, for Consumer Affairs; Stephen P. Groves, Michael A. Molony and Stephen L. Brown, all of Young, Clement, Rivers & Tisdale, Charleston, for Town of Seabrook Island, all Respondents.

TOAL, Justice:

In this rate case, Appellant Heater of Seabrook, Inc. ("Heater") appeals the circuit court's order affirming the Public Service Commission's denial of Heater's request for an

increase in its water and sewer rates. We reverse, finding the Public Service Commission ("Commission" or "PSC") abused its discretion in several respects.

### FACTUAL/PROCEDURAL BACKGROUND

Heater is a utility company providing water and sewer services to the Town of Seabrook Island ("Town"). On January 13, 1994, Heater filed an application for an increase in its water and sewer rates. Consumer Advocate Steven Hamm, Town, and R. Sid Crim intervened in the action. At some point, Town asked Commission to dismiss the application because Town was negotiating to purchase the utility from Heater and considered the rate filing a tactic to increase the purchase price of the utility. Commission did not dismiss the application, and a hearing was held on June 8, 1994.

In its Order denying Heater a rate increase, Commission deviated from its past practice of considering availability fees as contributions in aid of construction. Instead, it included availability fees as operating revenues. Additionally, although Heater presented several witnesses who recommended using the rate of return on rate base methodology to determine an appropriate rate, Commission used the operating margin methodology. Commission determined that an 8.6% operating margin was sufficient to allow Heater to meet its expenses and to provide its investors with a fair rate of return on equity.

Heater appealed Commission's denial of the rate increase, and the circuit court affirmed. Heater now appeals the decision of the circuit court.

### LAW/ANALYSIS

■ Heater argues PSC erred in the following respects: (1) in comparing Heater's test year[1] expenses with prior *calendar* years' expenses, rather than with the expenses of the prior *test* year, in determining Heater had not justified its need for

---

1. The "test year" concept is very important in the rate-setting process. In order to determine what a utility's expenses and revenues are for purposes of determining the reasonableness of a rate, one must select a "test year" for the measurement of the expenses and revenues.

a rate increase; (2) in treating availability fees[2] as operating revenues rather than as contributions in aid of construction; (3) in considering the acquisition of the utility by Town as a relevant factor in the rate case; and (4) in employing the "operating margin" approach to rate setting rather than the rate of return on rate base approach. Finally, Heater argues PSC has set its rates so low as to be confiscatory in violation of due process.

■ This Court employs a deferential standard of review when reviewing decisions of the Public Service Commission. If there is substantial evidence to support a decision by PSC, the Court will affirm the decision. *Hamm v. South Carolina Pub. Serv. Comm'n,* 309 S.C. 282, 422 S.E.2d 110 (1992). On questions about which there is room for a difference of intelligent opinion, this Court may not substitute its judgment for that of Commission. *Id.* Because Commission's findings are presumptively correct, the party challenging a Commission order bears the burden of showing that the decision is "clearly erroneous in view of the substantial evidence on the whole record." *Patton v. South Carolina Pub. Serv. Comm'n,* 280 S.C. 288, 290–91, 312 S.E.2d 257, 259 (1984).

## A. USE OF TEST YEAR EXPENSE FIGURES

■ Heater argues Commission abused its discretion by failing to use test year expense figures properly. We agree.

■ When calculating expenses in rate cases, Commission should use only test year data and known and measurable changes occurring after the test year. *Southern Bell Tel. & Tel. Co. v. South Carolina Pub. Serv. Comm'n,* 270 S.C. 590, 244 S.E.2d 278 (1978). Here, it used only test year data to calculate Heater's operating expenses; in fact, Heater agreed with the Commission staff's calculation of test year operating expenses. Plainly Commission did not fail to use test year data in determining Heater's operating margin.

---

2. Basically, an availability fee is a fee paid by one who is not currently using a utility's water and sewer services but who anticipates a future need for such service and wants to keep utility lines available for such use.

In determining whether Heater's expenses had increased enough to justify a rate increase, however, Commission did not compare the test year expenses from Heater's previous rate case with those from this rate case. Instead, it simply chose random calendar years in which Heater's expenses in various categories exceeded the expenses for those categories in the test year for this proceeding. The purpose of such comparisons was to show that Heater had not experienced increases in expenses sufficient to justify a rate increase.

To show that its expenses have increased, Heater need only introduce data comparing the expenses from the test year used in the previous rate case with those from the test year in this case, including, of course, any known and measurable changes occurring after the test year. Any other comparison is irrelevant. Therefore, Commission's comparison of prior non-test years with the test year for the current case is seriously misleading. In determining whether Heater's expenses had increased enough to justify a rate increase, Commission should have compared the current test year, including any known and measurable changes after the test year, with the test year from the prior case. Its failure to do so constitutes reversible error.

## B. AVAILABILITY FEES

Heater argues the circuit court erred in affirming Commission's decision to treat availability fees as operating revenues rather than as contributions in aid of construction. We agree.

At the hearing on Heater's application for a rate increase, both the Commission staff and the Consumer Advocate proposed treating availability fees as operating revenues. Philip Miller, an expert witness for the Consumer Advocate, testified that during Heater's test year, Heater billed annual availability fees of $66,640. Miller disagreed with Heater's proposal to use those fees as a reduction to rate base, arguing that Heater's proposal did not eliminate from operating expenses certain expenses associated with availability fees. According to Miller, the expenses associated with the availability fees that were not excluded from Heater's operating expenses include (1) costs associated with the billing, collecting, and

handling of the availability fee revenues, (2) costs associated with maintenance of the distribution lines for both current customers and availability fee customers, and (3) costs associated with the utility's business license fee. Miller conceded, however, that Heater's proposal to use availability fees as a reduction to rate base eliminated certain expenses related to the availability fees, namely, depreciation expense and interest.

Jerry Tweed testified in rebuttal that "[t]he use of availability fees to reduce rate base does benefit existing customers by reducing depreciation expense and interest expense and, if the rates are set based upon return on rate base, a further benefit will be received by the current customers." Tweed also addressed Miller's argument that under Heater's proposal, expenses relating to availability fees were not excluded from operating expenses, but the fees themselves were excluded from operating revenues. He testified that "[w]ith regard to the maintenance on the distribution lines, all of the lines are necessary to serve existing customers and there would be no additional cost to be considered." Tweed also testified that most of the cost associated with billing and collection of availability fees was included in the salary of a Heater employee and that the portion of the employee's salary relating to the availability fees was capitalized. Finally, Tweed acknowledged that the business license fee added $193 in operating expenses, which amount would not be matched by operating revenues.

Tweed found that even considering the unmatched revenues, the total expense borne by the rate payers is "more than offset by the benefit associated with the reduced depreciation and interest expense which occurs when the fees are taken as a reduction to rate base." Finally, Tweed noted that in prior rate cases, Commission had rejected the Consumer Advocate's arguments that Commission should include availability fees in operating revenues.

In Heater's 1991–92 rate case, the Consumer Advocate also recommended increasing Heater's operating revenues to account for availability fees. PSC Order 92–1028, at 12. Commission rejected this suggestion, adhering to its position that

availability fees are a contractual matter outside its jurisdiction. PSC Order 92–1028, at 17–18.

In the order in this proceeding, however, Commission cited its definition of "rate," which includes availability fees, as authority for its finding that it has power to include availability fees in operating revenues. It also found persuasive Miller's reasons related to unmatched expenses and, therefore, ordered availability fees to be included in Heater's operating revenues.

■ As noted before, this Court will not disturb any decision of the Public Service Commission if substantial evidence supports that decision and if the decision does not represent an abuse of discretion. *Hamm*, 309 S.C. 282, 422 S.E.2d 110. We do not hold that availability fees can *never* be included as operating revenues for purposes of calculating the operating margin or determining a rate. In this particular case, however, there was no substantial evidence supporting Commission's decision regarding treatment of availability fees. The rationale for Commission's treatment of availability fees as operating revenues was that any other treatment of those fees ran the risk of violating the principle that operating revenues should match operating expenses. According to Tweed's uncontroverted testimony, the total amount of unmatched expenses was negligible at best, so the reason given for Commission's treatment of availability fees was, in fact, illusory.

Moreover, as Tweed testified, including availability fees as operating revenue allows current users to benefit from the availability fees, while the customers who actually pay the fees may never benefit. Given these facts, and particularly the negligible amount of unmatched expenses associated with the availability fees, we do not believe reasonable minds could disagree about whether Commission should have departed from its longstanding practice of treating availability fees as contributions in aid of construction.

C. USE OF OPERATING MARGIN METHODOLOGY

In determining a just and reasonable rate for Heater, Commission employed the operating margin methodology as opposed to the rate of return on base rate methodology. Heater argues, essentially, that there is no substantial evi-

dence to support Commission's decision to employ the operating margin methodology. In light of our conclusions concerning availability fees and test year expenses, we need not discuss this issue at length. Nevertheless, we mention a few of our recent decisions in this area simply to provide Commission with some meaningful guidance.

In *Nucor Steel v. South Carolina Public Service Comm'n*, 312 S.C. 79, 439 S.E.2d 270 (1994), this Court found that by statute, the Public Service Commission must determine a fair and reasonable rate of return and must document fully the evidence justifying the rate of return. The Court further held that South Carolina law does not require Commission to use any particular price-setting methodology. *Id.* at 85, 439 S.E.2d at 273. Generally, then, the Public Service Commission has wide latitude to determine an appropriate rate-setting methodology.[3]

This does not mean, however, that a particular methodology may not be more appropriate than another under a specific set of circumstances. *See, e.g., Hamm v. South Carolina Pub. Serv. Comm'n*, 309 S.C. 295, 422 S.E.2d 118 (1992) (approving PSC's finding that operating margin methodology is particularly appropriate where a utility's rate base has been substantially reduced by customer donations, tap fees, contributions in aid of construction, and book value in excess of investment). In fact, the use of a methodology related to the actual circumstances faced by a utility company may almost guarantee the setting of a just and reasonable rate. Therefore, although we will continue to look at whether there is substantial evidence supporting the rate of return set by Commission and will not analyze in isolation whether the decision to use a particular methodology is so supported, we caution Commission to employ a methodology tailored to the facts and circumstances of the case before it.

Here, the use of the operating margin methodology seems unusual, to say the least. Typically, that methodology is appropriate where a utility's rate base has been substantial-

---

3. Heater correctly notes that although S.C.Code Ann. § 58–5–240 (Supp.1995) requires Commission to specify an allowable operating margin, that directive does not mean that the operating margin methodology must be used in determining a fair rate of return.

ly reduced by customer donations, tap fees, contributions in aid of construction, and book value in excess of investment. *See, e.g., Hamm v. South Carolina Pub. Serv. Comm'n,* 309 S.C. 295, 422 S.E.2d 118. As the testimony in this proceeding indicates, it is less appropriate for utilities that have large rate bases and need to earn a rate of return sufficient to obtain the necessary equity and debt capital that a larger utility needs for sound operation. We caution Commission to consider the circumstances of the case before it when choosing a price-setting methodology.

### CONCLUSION

Based on our disposition of the issues concerning test years and availability fees, we need not decide the remaining issues. The decision of the circuit court is **REVERSED,** and this case is **REMANDED** to the Public Service Commission for further proceedings in accordance with this opinion.

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.