503 S.E.2d 739

**HEATER OF SEABROOK INC., Appellant,**

v.

**The PUBLIC SERVICE COMMISSION OF SOUTH CAROLINA, Respondent.**

No. 24821.

Supreme Court of South Carolina.

Heard June 3, 1998.

Decided July 21, 1998.

---

Darra W. Cothran, of Woodward, Cothran & Herndon, Columbia, for appellant.

F. David Butler, of the Public Service Commission of South Carolina, Columbia, for respondent Public Service Commission of South Carolina.

Elliott F. Elam, Jr., of the South Carolina Department of Consumer Affairs, Columbia, for respondent Consumer Advocate.

Stephen P. Groves, Michael A. Molony, and Stephen L. Brown, of Young, Clement, Rivers & Tisdale, L.L.P., Charleston, for respondent Town of Seabrook Island.

WALLER, Justice:

On appeal is an order denying Appellant Heater of Seabrook's application for a rate increase. We reverse the Public Service Commission's order and remand for further findings.

## FACTS/PROCEDURAL POSTURE

On January 13, 1994 Heater of Seabrook ("Utility"), a water and sewer utility, applied to Respondent Public Service Commission ("PSC") for a rate increase. Utility sought a rate increase of 10.40% for water and 34.02% for sewer, for a combined overall rate increase of 20.67%. The South Carolina Consumer Advocate and the Town of Seabrook Island were granted leave to intervene. After a public hearing, the PSC issued Order Number 94–644, dated July 11, 1994, denying Utility's request. The denial was affirmed by the circuit court. Utility appealed.

We reversed, citing two errors in the PSC's order: (1) the comparison of Utility's current test year expenses with those from random prior calendar years in deciding whether Utility's expenses had increased enough to justify a rate increase; and (2) the treatment of availability fees as operating revenues. We instructed the PSC on remand (1) to compare Utility's current test year expenses only with the test year expenses from Utility's previous rate case; and (2) to treat availability fees as contributions in aid of construction rather than revenues. *Heater of Seabrook, Inc. v. PSC,* 324 S.C. 56, 478 S.E.2d 826 (1996) (*"Heater I "*).

On remand, the PSC re-analyzed Utility's application in light of *Heater I.* On February 21, 1997 it issued Order

Number 97–114 again denying Utility's request for a rate increase. The PSC supplemented its findings in Order Number 97–251, dated March 27, 1997, denying Utility's petition for rehearing. The circuit court affirmed. Utility again appeals.

## *ISSUES*

I. Did the PSC employ the appropriate rate setting method?

II. Was the rate set by the PSC supported by the evidence?

## *DISCUSSION*

### *I. Rate Setting Method*

Utility argues error in the PSC's decision to employ the "operating margin" method[1] in setting the appropriate rate of return. Instead, it argues the PSC should have used the "rate of return on rate base" method.[2]

The PSC employed the operating margin method in its initial 1994 order. In *Heater I,* we addressed the PSC's choice, while not explicitly ruling on it, "simply to provide the Commission with some meaningful guidance." 324 S.C. at 64, 478 S.E.2d at 830. We first noted there was no statutory requirement that the PSC use any particular rate setting method[3], and therefore it had "wide latitude" to determine an appropriate method. We continued:

---

1. Determined by dividing the net operating income for return by the total operating revenues of the utility.

2. Determined by dividing the net income for return by the rate base. A utility's "rate base" is defined as the amount of investment on which a regulated public utility is entitled to an opportunity to earn a fair and reasonable return; and represents the total investment in, or the fair value of, the used and useful property which it necessarily devotes to rendering the regulated services. *Hamm v. South Carolina PSC,* 309 S.C. 282, 285, 422 S.E.2d 110, 112 (1992).

3. *See Nucor Steel v. South Carolina PSC,* 312 S.C. 79, 85, 439 S.E.2d 270, 273 (1994) ("The statutory mandate set forth in S.C.Code Ann. § 58–5–240(H) only requires the PSC to determine a fair rate-of-return and document fully the evidence which justifies that rate-of-return. Nothing in the plain language of the statute requires the PSC to adopt any one particular price-setting methodology.").

This does not mean, however, that a particular methodology may not be more appropriate than another under a specific set of circumstances. In fact, the use of a methodology related to the actual circumstances faced by a utility company may almost guarantee the setting of a just and reasonable rate. Therefore, although we will continue to look at whether there is substantial evidence supporting the rate of return set by Commission and will not analyze in isolation whether the decision to use a particular methodology is so supported, **we caution Commission to employ a methodology tailored to the facts and circumstances of the case before it.**

**Here, the use of the operating margin methodology seems unusual, to say the least.** Typically, that methodology is appropriate where a utility's rate base has been substantially reduced by customer donations, tap fees, contributions in aid of construction, and book value in excess of investment. As the testimony in this proceeding indicates, it is less appropriate for utilities that have large rate bases and need to earn a rate of return sufficient to obtain the necessary equity and debt capital that a larger utility needs for sound operation. **We caution Commission to consider the circumstances of the case before it when choosing a price-setting methodology.**

*Id.* (emphasis supplied).

On remand in Order Number 97–114, the PSC again found the operating margin method was appropriate, "as we have employed it with other water and sewer companies similarly situated." Supplemental Order Number 97–251 further elaborated, stating Utility was "similarly situated to Carolina Water Service in size, for example, and we have used the operating margin methodology properly in the past in that company's rate cases." The PSC also stated, "[D]istinguishing factors must be pointed out before the Commission may properly depart from its past methodology in similar circumstances. No such factors were pointed out here. **Thus, this Commission stuck to precedent.**" (emphasis supplied).

Utility argues the PSC's order did not follow the court's instructions in *Heater I* because its decision was not tailored to the factual circumstances of its case. We agree. In two

separate places, we instructed the PSC to consider the facts and circumstances of the case before it in making its decision. We also strongly suggested the PSC should consider the size of Utility's rate base in choosing the appropriate method.

Despite our instructions in *Heater I*, the PSC based its decision of the appropriate rate setting method on two things: comparison with other utilities and prior practice. Nowhere in the orders was there a reference to any characteristic of Utility making the operating margin method appropriate. We have previously addressed the impropriety of relying on precedent as the basis for factual determinations. *See, e.g., Hamm*, 309 S.C. at 289, 422 S.E.2d at 114 ("The declaration of an existing practice may not be substituted for an evaluation of the evidence. A previously adopted policy may not furnish the sole basis for the Commission's action.").

 Moreover, even without the specific instructions from *Heater I*, the order is too vague to allow for more than cursory appellate review. For example, the order refers to Carolina Water Service, another water and sewer utility, as the comparison standard. However, there is no evidence whatsoever in the record giving any information about Carolina Water Service. Under these circumstances, it would be impossible for an appellate court to afford meaningful review to any comparison findings regarding this utility. The same reasoning applies to the PSC's generic reference to "other similarly situated" utilities.

> The findings of fact of an administrative body must be sufficiently detailed to enable the reviewing court to determine whether the findings are supported by the evidence and whether the law has been properly applied to those findings. Implicit findings of fact are not sufficient. Where material facts are in dispute, the administrative body must make specific, express findings of fact.

*Able Communications, Inc. v. South Carolina PSC*, 290 S.C. 409, 411, 351 S.E.2d 151, 152 (1986). *See also* S.C.Code Ann. § 1-23-350 (1986) ("A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts

supporting the findings."); *Hamm v. Southern Bell Telephone and Telegraph Co.,* 302 S.C. 132, 394 S.E.2d 311 (1990).

 We have repeatedly emphasized the need for specificity in administrative orders. The need is particularly great when complex issues are involved, such as those generally found in utility rate setting cases. Administrative agencies are afforded wide latitude in making decisions, as shown in the deferential standard of appellate review.[4] However, the writing of orders without sufficient detail or analysis, coupled with this standard of review, can make their decisions as a practical matter unassailable on appeal.

We find the PSC's order regarding the choice of rate method does not comply with the specificity requirements for administrative orders as set forth above.

## II. *Evidentiary Support for Rate Set by PSC*

 Utility next argues error in the PSC's finding an operating margin of 8.6% was reasonable, and in the resulting denial of the rate increase. We do not reach the merits of Utility's argument because we find the PSC's order insufficient for reasons similar to those discussed in Issue I.

In Order Number 97–114, the PSC stated it had moved some $66,480 (representing the availability fees collected) from revenue to contributions in aid of construction, in accordance

---

4. Judicial review of PSC orders is controlled by S.C.Code Ann. § 1–23–380(A)(6) (Supp.1997). From this statute comes the well-settled "substantial evidence" rule:

 The findings of the Commission are presumptively correct and have the force and effect of law. Therefore, the burden of proof is on the party challenging an order of the Commission to show that it is unsupported by substantial evidence and that the decision is clearly erroneous in view of the substantial evidence on the whole record. The Public Service Commission is recognized as the "expert" designated by the legislature to make policy determinations regarding utility rates; thus, the role of a court reviewing such decisions is very limited.

 *Patton v. South Carolina PSC,* 280 S.C. 288, 290–91, 312 S.E.2d 257, 259 (1984) (internal citations omitted). *See also Palmetto Alliance, Inc. v. South Carolina PSC,* 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984) (Substantial evidence is something less than the weight of the evidence and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence).

with the Court's order in *Heater I*. It then granted Utility $66,480 in additional annual revenue to replace the availability fee amount, approving a water rate increase of approximately 8.5% to earn this additional revenue. On the issue of the appropriate operating margin, it stated it had re-examined the evidence in light of *Heater I* and had determined that only "minimal increases in expenses" had been incurred which were not significant enough to justify a rate increase.[5]

The order gave no further reasons or findings of fact upon which the determination was based. When Utility petitioned for rehearing, the PSC dismissed Utility's argument that Order Number 97–114 did not make specific findings of fact:

> We discern no error. In remanding the case back to the Commission, the South Carolina Supreme Court expressed the opinion that the $66,640 in availability fees should not have been treated as operating revenue, because of a lack of substantial evidence. In Order No. 97–114, we specifically granted the Company $66,480 in additional annual rate revenue to replace the availability fees that we formerly counted as regulated revenue. We also noted that this was our only change from Order No. 92–1028, wherein we fully explained our reasoning on arriving at the 8.60% operating margin. For this reason, we believe that all appropriate findings of fact are contained in Order No. 97–114, as that Order fully addressed the Supreme Court's concerns. Findings of fact supporting the operating margin reached were fully explained in the prior Order, and other than the matters discussed above, were fully laid out therein.

State law requires the PSC's "determination of a fair rate of return must be documented fully in its findings of fact and based exclusively on reliable, probative, and substantial evidence on the whole record." S.C.Code Ann. § 58–5–240 (Supp.1997). *See also* S.C.Code Ann. § 1–23–350 (1986) (requiring findings of fact, if set forth in statutory language, to be accompanied by a "concise and explicit statement of the underlying facts supporting the findings"); *Hamm v. South-*

---

5. During the pendency of this appeal, the PSC had allowed Utility to put its requested increased rates into effect under bond. Thus, the PSC ordered Utility to refund $308,739, representing the difference between the increased rate and the rate the PSC ultimately allowed.

*ern Bell Telephone and Telegraph Co.*, 302 S.C. 132, 394 S.E.2d 311 (1990); *Able Communications, Inc. v. South Carolina PSC*, 290 S.C. 409, 351 S.E.2d 151 (1986). Neither of the 1997 orders make any findings of fact other than to find the increase in expenses "minimal." Again, this type of conclusory statement, with no supporting factual documentation, makes meaningful appellate review impossible.[6] Moreover, we are troubled by the PSC's reference to Order Number 92–1028 as containing its reasoning for arriving at the appropriate operating margin. This order contained the PSC's findings from Utility's prior rate case, where a rate increase was granted on December 12, 1992. We find it inappropriate to refer to this order, which was based on evidence, and a prior test year, completely different from Utility's financial condition at the time of the current application.[7] Finally, the only other source for the missing findings of fact was an order we had already reversed on the basis of improper findings and comparisons.

For these reasons, we find the PSC's order did not comply with applicable requirements, particularly those set forth in section 58–5–240, and therefore cannot stand.

## CONCLUSION

We find Order Number 97–114, as supplemented by Order Number 97–251, insufficient for the reasons described above. We therefore remand for further proceedings consistent with this opinion. Regarding the choice of rate setting method, the PSC is ordered to comply with our directive as set out in *Heater I* and as again emphasized in this opinion. Regarding the setting of an appropriate rate of return, the PSC shall be

---

**6.** For example, it is unknown whether the PSC meant that it found the increase in expenses minimal on their face, or in the context of how such increase ultimately factored into a resulting operating margin calculation.

**7.** Thinking the PSC may have mistakenly referred to Order Number 92–1028 when it meant Order Number 94–644 (the original order from the current application which was reviewed in *Heater I*), we specifically questioned the PSC on this point at oral argument. The PSC affirmed it was referring to the 1992 order.

mindful of the legislative mandates of sections 1–23–350 and 58–5–240 in writing its order.[8]

**REVERSED AND REMANDED.**

FINNEY, C.J., TOAL, MOORE and BURNETT, JJ., concur.

---

8. In light of our disposition of Issues I and II, we decline to address Utility's due process argument. However, due to confusion in the PSC's interpretation of *Heater I*, we emphasize that our decision in no way reflects on the PSC's duty to consider this issue on remand should it arise. Furthermore, we reverse the PSC's finding this issue is moot because the utility has been sold to the Town of Seabrook. Clearly, determination of the issue, should it arise, would affect Utility's duty to pay the refund ordered by the PSC, *see supra* note 5.