22046

Irvin D. PARKER, Consumer Advocate of South Carolina, Appellant, v. The SOUTH CAROLINA PUBLIC SERVICE COMMISSION and South Carolina Electric and Gas Company, Respondents.

(313 S. E. (2d) 290)

Supreme Court

*Steven W. Hamm* and *Raymon E. Lark, Jr.*, Columbia, *for appellant.*

*Arthur G. Fusco* and *C. Dukes Scott*, Columbia, *Hubert E. Long*, of *Long, Bouknight, Nicholson & Davis, Lexington, Particia T. Marcotsis*, and *James B. Richardson, Jr.*, of *Ham & Richardson*, Columbia, *for respondents.*

February 22, 1984.

NESS, Justice:

This is an appeal from an order sustaining respondent's (S. C. Public Service Commission) approval of an electrical rate increase requested by co-respondent (SCE & G). Appellant (Irvin D. Parker, Consumer Advocate) claims the trial court erred in upholding the Commission's rate base[1] calcula-

---

[1] "A public utility's 'rate base' represents the total investment in, or the fair value of, the used and useful property which it necessarily devotes to rendering the regulated services." *Southern Bell v. Public Service Commission*, 270 S. C. 590 at 600, 244 S. E. (2d) 278, 283 (1978). Utility rate increases are gauged to generate revenues sufficient to realize a reasonable return on the rate base.

tions which: (1) excluded certain post test year revenues; and (2) included funds maintained in an injuries and damages reserve account. We sustain the rate base calculations and reverse and remand as to the reserve account.

"[R]ate-making is not an exact science, but a legislative ■ function involving many questions of judgment and discretion." *Colorado UTE Electric Association, Inc. v. The Public Utilities Commission,* 198 Colo. 534, 602 P. (2d) 861, 864 (19799. The "test year" formula serves as a mechanism to isolate the data which necessarily must be reviewed in order to determine the rate base, and, consequently, the validity of a requested rate increase. Essential to the success of this method of rate base determination is the establishment of a "cut-off" date, to insure some degree of finality in the rate making process. *City of Pittsburgh v. Pennsylvania Public Utility Commission,* 187 Pa. Super. 341, 144 A. (2d) 648 (1958).

In *Southern Bell. v. The Public Service Commission,* 270 S. C. 590, 244 S. E. (2d) 278 (1978), we authorized the Commission to adopt a historical test year as the basis for calculating a utility's rate base, so long as it made adjustments for any known and measurable out-of-period changes in expenses, revenues and investments which would materially alter the rate base. Appellant maintains our holding in *Southern Bell* requires the inclusion in rate base calculations of projected revenues attributable to the new SCE & G custmers joining the system after the end of the test year. We disagree.

"The object of test year figures is to reflect typical ■ conditions. Where an *unusual* situation exists which shows that the test year figures are *atypical* the [C]ommission should adjust the test year data." (Emphasis added). *City of Pittsburgh, supra,* at 659; *Equitable Gas Company v. Pennsylvania Public Utility Commission,* 45 Pa. Cmwlth. 610, 405 A. (2d) 1055 (1979). Any other standard would negate the aspect of finality created by a test year time limitation. Unlike the 3.7 million dollar wage increase addressed in *Southern Bell,* the addition and loss of customers is a routine occurrence in the daily operation of a public utility. We find the post test year addition of eleven new customers, which arguably will provide net revenues of $402,000, does not constitute an atypical circumstance warranting an adjustment in SCE & G's rate base. To the extent this conclusion conflicts

with our ruling in *Southern Bell,* we hold that minimal addition or loss of customers does not require an adjustment of a utility's rate base.

Appellant also argues the trial court erred in sustaining the Commission's inclusion of the injuries and damages reserve account in SCE & G's rate base. We agree.

"The 'rate base' is the amount of investment on which a regulated public utility is entitled to an opportunity to earn a fair and reasonable return." *Southern Bell, supra,* 270 S. C. at 600, 245 S. E. (2d) at 283. The Commission recognized this principal in its order, where it stated: "the rate base should reflect the *actual investment by investors* in the Company's property and value upon which stockholders will receive a return on their investment." (Comm. Order #30-375 at 28).

At the Commission's hearing, appellant introduced testimony which indicated the reserve account was ratepayer funded. Respondents did not attempt to contravert this testimony. The trial court did not specifically address this issue, instead ruling the Commission acted within its discretion in including the reserve account in SCE & G's rate base.

Discretion cannot be exercised without a factual basis. ■■ *Brown v. Johnson,* 276 S. C. 68, 275 S. E. (2d) 876 (1981).

The record provides no justification for the Commission's inclusion of the reserve account in SCE & G's rate base, in light of *Southern Bell* and the Commission's own pronouncement. We hold the trial court erred in upholding the inclusion of the injuries and reserve account, and remand this issue to the Court of Common Pleas for return to the Commission, who will make the proper rate adjustments.

Affirmed in part and reversed in part.

LEWIS, C. J., and LITTLEJOHN and HARWELL, JJ., concur.

GREGORY, J., not participating.