### 23705

Steven W. HAMM, Consumer Advocate for the State of South Carolina, Appellant v. SOUTH CAROLINA PUBLIC SERVICE COMMISSION and South Carolina Electric and Gas Company, Respondents.

(422 S.E. (2d) 110)

Supreme Court

---

*Steven W. Hamm, Raymon E. Lark, Jr.,* and *Elliott F. Elam, Jr.* all of the *South Carolina Department of Consumer Affairs,* Columbia, *for appellant.*

*Robert T. Bockman, Deborah A. Davis* both of the *McNair Law Firm, Belton T. Zeigler,* and *Martha A. Ward* and *Gayle*

B. *Nichols*, Columbia, both of *S.C. Public Service Com'n, for respondents*.

Heard March 9, 1992.

Decided Aug. 31, 1992.

TOAL, Justice:

This consolidated appeal arises from several rate orders of the South Carolina Public Service Commission ("Commission") granting certain relief to South Carolina Electric and Gas ("SCE&G"). We affirm in part, reverse in part, and remand.

## 1987 CASE

*Rerating Issue*

In 1983, SCE&G applied for a change in its rate structure to add the V.C. Summer Nuclear Station, into its rate base.[1] The Commission excluded 400 megawatts ("MW") or $114,770,512 of the investment in the V.C. Summer Plant from SCE&G's rate base. The Commission did not find that the capacity represented by the 400 MW was not used or useful but excluded this portion of the investment as part of a "phase-in" of the new plant. The Commission ordered the carrying cost of the 400 MW deferred. The entire depreciation expense of the V.C. Summer Plant was allowed. This order was affirmed by this Court in *Hamm v. South Carolina Public Service Commission and South Carolina Electric and Gas*, 294 S.C. 320, 364 S.E. (2d) 455 (1988). In 1987, SCE&G sought the inclusion of the 400 MW into their rate base (less depreciation) and the amortization of the previously-deferred carrying cost over a ten-year period. This action was accompanied by a proposed new depreciation rate which decreased SCE&G's depreciation expense. The net result was no increase in the consumer rates. The Commission approved SCE&G's requests. In so doing, the Commission noted there had been a system-wide rerating of SCE&G's generating units with a net decrease in

---

[1] Rate base is the "amount of investment on which a regulated public utility is entitled to an opportunity to earn a fair and reasonable return . . . [and] represents the total investment in, or the fair value of, the used and useful property which it necessarily devotes to rendering the regulated services." *Southern Bell Tel. & Tel. Co. v. Pub. Serv. Comm'n of S.C.*, 270 S.C. 590, at 600, 244 S.E. (2d) 278, at 283 (1978).

total capacity of 69 MW. The Commission found this rerating to be immaterial. In *Hamm v. South Carolina Public Service Commission and South Carolina Electric and Gas*, 298 S.C. 309, 380 S.E. (2d) 428 (1989), we vacated the Commission's order and remanded the case for further findings of fact under *Able Communication v. South Carolina Public Service Commission*, 290 S.C. 409, 351 S.E. (2d) 151 (1986) on the issue of whether operational imprudence was reflected in those reratings. The Commission's order on remand is at issue in this appeal.

The Commission's order on remand made the specific factual finding that the rerating was the result of normal operating and engineering constraints. Further, the Commission found no evidence of operational imprudence resulting in the rerating. Although the burden of proof of the reasonableness of all costs incurred which enter into a rate increase request rests with the utility, the utility's expenses are presumed to be reasonable and incurred in good faith. *Missouri ex rel. Southwestern Bell Co. v. Public Service Comm'n of Missouri*, 262 U.S. 276, 43 S.Ct. 544, 67 L.Ed. 981(1923) (Brandis, Jr., J., concurring); *West Ohio Co. v. Pub. Util. Comm'n*, 294 U.S. 63, 55 S.Ct. 316, 79 L.Ed. 761 (1935); *Boise Water Corp. v. Idaho Pub Util. Comm'n*, 97 Idaho 832, 555 P. (2d) 163 (1976); *City of Chicago v. Illinois Commerce Comm'n*, 133 Ill. App. 3d 435, 88 Ill. Dec. 643, 478 N.E. (2d) 1369 (1985) (modified by statute as noted in *People ex rel. Hartigan v. Illinois*, 117 Ill. (2d) 120, 109 Ill. Dec. 797, 510 N.E. (2d) 865 (1987); *Long Island Lighting Co. v. Pub. Serv. Comm'n*, 134 A.D. (2d) 135, 523 N.Y.S. (2d) 615 (1987); *City of Norfolk v. Chesapeake & Potomac Tel. Co.*, 192 Va. 292, 64 S.E. (2d) 772 (1951). This presumption does not shift the burden of persuasion but shifts the burden of production on to the Commission or other contesting party to demonstrate a tenable basis for raising the specter of imprudence. *Long Island, supra.* This evidence may be provided by the Consumer Advocate as an intervenor through the liberal discovery provision provided for in S.C. Code Ann. § 37-6-605 (Supp. 1991) or through the Commission's broad investigatory powers. S.C. Code Ann. § 58-3-190 (1976) and § 58-27-1960 (1976). The ultimate burden of showing every reasonable effort to minimize fuel costs remains on the utility. *Hamm v. South Carolina*

*Pub Serv. Comm'n and Carolina Power and Light Co.*, 291 S.C. 119, 352 S.E. (2d) 476 (1987).

In this case, there was no direct evidence of imprudence. The Commission found the rerating itself did not suggest imprudence but was the result of normal operating and engineering constraints. The Commission sits as the trier of facts, akin to a jury of experts. *South Carolina Tel. & Tel. Co. v. Pub. Serv. Comm'n*, 270 S.C. 590, at 597, 244 S.E. (2d) 278, at 282 (1978). This Court is without authority to set aside an agency's judgment on a factual issue where there is substantial evidence of record to support the agency's decision. *Hamm v. South Carolina Pub. Serv. Comm'n*, 294 S.C. 320, 364 S.E. (2d) 455 (1988). We, therefore, affirm the Commission's inclusion of the 400 MW previously withheld from SCE&G's base rate.

## 1989 RATE INCREASE CASE

In 1989, SCE&G sought a rate increase. The Consumer Advocate intervened. The Commission granted SCE&G relief. The Commission's decision on several issues relating to the increase was appealed to the Circuit Court. The Circuit Court affirmed the Commission and the Consumer Advocate now appeals to this Court.

*Rate of Return*

The Commission found 13.25% is a fair rate of return on SCE&G's common equity. The Consumer Advocate argues that the Commission's conclusion is not supported by substantial evidence in the record. We agree.

Four experts testified on this issue. All four experts principally relied on the discounted cash flow ("DCF") methodology. According to this method, the proper rate of return is determined by adding to the common stock's current yield a rate of increase or growth rate which investors will expect to occur over time. All four experts relied on this method. Their opinions, however, on the proper rate of return differed. The expert opinion as to the proper growth rate varied between 3.5% and 5.0%. The expert witness of the Consumer Advocate opined the appropriate cost of equity would be 12.75%. The expert for the Department of the Navy opined the proper rate ranged between 11.92% and 12.42%.

Dr. Rhyne testified for the Commission staff. In his prefiled testimony, he gave a broad acceptable range of 12.25% to 13.25%, excluding issuance costs. At the hearing, Dr. Rhyne testified, upon updated information, in his opinion, the best point estimate fell between 12.5% and 13.0%.

Dr. Olson, who testified for SCE&G, applied the DCF method and arrived at a range of 12.39% to 12.89%. He then adjusted this figure by applying a financing costs adjustment and an adjustment for "market breaks" by adding 8%. This resulted in a range of 13.4% to 13.9%. In his prefiled testimony, he opined SCE&G's return on equity should be set at 13.25% to 13.75%. At the hearing, he modified his opinion upward to 14.0%. This figure included the financing costs and "market breaks" adjustments. It was undisputed that both these adjustments were tied to projected new stock issues. Since no evidence was presented indicating SCE&G intended to issue common equity stock in the near future, the Commission found these adjustments were not warranted. Nevertheless, the Commission set the fair rate of return at 13.25% finding it consistent with the opinions of Drs. Rhyne and Olson. We disagree. Dr. Rhyne's testimony was that 13.0% was the highest rate warranted. Even assuming that the upward modification in Dr. Olson's opinion at the hearing was solely due to increases in the factors used in the DCF formula and not reflective of a modification in his adjustments, his opinion of the highest rate of return allowable would only be 12.96% when the adjustments found inappropriate by the Commission are deleted (14.0 divided by 1.08). Thus, we find the Commission's determination of a proper rate of return is without substantial evidence. *Parker v. South Carolina Pub. Serv. Comm'n*, 281 S.C. 215, 314 S.E. (2d) 597 (1984). The evidence does not support a cost of equity higher than 13%. We, therefore, remand for a determination of the proper rate of return consistent with this opinion.

*Edison Electric Institute ("EEI") Dues*

There was evidence submitted at the hearing showing a portion of the EEI dues were used for the Institute's lobbying efforts, charitable contributions, and social functions. Other Commissions have disallowed these dues or a portion of them based on these uses. *Re: Hawaiian Electric Co.*, 128 PUR4th

471 (1991); *Re: Louisville Gas & Elec. Co.*, 119 PUR4th 431 (1990). The Commission's order excluded only the portion of these dues which applied to the Institute's Media Communications Fund. The Commission's order noted that the Consumer Advocate argues these dues should be disallowed as they provided no benefit to the rate payers. The order further noted that SCE&G insisted their membership did provide a benefit. The Commission made no findings of fact but concluded there was no reason to vary from its position in prior cases.

The declaration of an existing practice may not be substituted for an evaluation of the evidence. *Butler Township Water Co. v. Pennsylvania Pub. Util. Comm'n*, 81 Pa. Commw. 40, 473 A. (2d) 219 (1984). A previously adopted policy may not furnish the sole basis for the Commission's action. *Id.* The Commission must set forth findings which are sufficiently detailed to enable the reviewing court to determine whether the findings are supported by the evidence and whether the law has been properly applied to those findings. *Able, supra.* We find this recital of conflicting views followed by a conclusive statement by the Commission inadequate to meet the standards set out in *Able.* We, therefore, remand this issue for further findings consistent with our holding in *Able.*

*Litigation Expenses*

The Consumer Advocate argues that the Commission erred in allowing all of SCE&G's litigation expenses incurred during the test year. SCE&G had a litigation expense of $1,014,319 during the test year which spanned the twelve months preceding September 30, 1988. This expense was significantly higher than any preceding calendar year, including 1988. The object of test year figures is to reflect *typical* conditions. *Parker v. South Carolina Pub. Serv. Comm'n*, 280 S.C. 310, 313 S.E. (2d) 290 (1984). The test year is established to provide a basis for making the most accurate forecast of the utility's rate base, reserves, and expenses in the near future when the prescribed rates are in effect. *Bell Telephone Co. v. Public Util. Comm'n*, 47 Pa. Commw. 614, 408 A. (2d) 917 (1979). Where an unusual situation exists which shows that the test year figures are atypical and thus do not indicate future trends, the Commission should adjust the test

year data. *Parker, supra.* Litigation expenses may vary year to year. Appreciating this fact, it is not uncommon for public utility commissions to average these expenses so the figure more accurately reflects the expected future expense when the prescribed rates are in effect. *See Re: Connecticut Water Co.*, 125 PUR4th 443 (1991); *Re: Hawaii Elec. Light Co.*, 120 PUR4th 427 (1991); *Pennsylvania Pub. Util. Comm'n v. National Fuel Gas Distribution Corp.*, 121 PUR4th 434 (1990). The Commission's order does not make any findings regarding whether this litigation expense accurately represented typical conditions and provided a reasonable basis for projecting the future expense. We, therefore, remand this issue to the Commission.

*GENCO Refund*

The Consumer Advocate argues that the Commission erred in including the GENCO refund in the test year figures. The Consumer Advocate maintains that this refund should have been amortized over a period of time. The Commission found the GENCO refund was included to reflect the actual level chargeable by GENCO for the test year. The Commission noted that amortization would be improper as the rate payers have not borne higher rates due to the overcharge but would do so if the refund was amortized. The Commission's finding is supported by the evidence and we affirm.

*Holding Company Charges*

SCE&G is a subsidiary of SCANA Corporation, a holding company. The Consumer Advocate challenges the Commission's approval of certain expenses attributable to services performed by SCANA for SCE&G. By statute, a utility must make an affirmative showing of the reasonableness, fairness, and absence of any injurious effect upon the public of any fees or charges growing out of any transactions between any electrical utility and an affiliated company. S.C. Code Ann. 58 27-2090 (Supp. 1991). The Commission found SCE&G established procedures for accounting and billing of transactions between affiliated companies and the holding company were fair and reasonable. The Commission's finding is supported by substantial evidence in the record. Accordingly, we affirm the Commission on this issue.

*Health Care Costs & Construction Work in Progress (CWIP)*

Finally, the Consumer Advocate argues that the Commission erred in allowing an adjustment for projected health cost and its inclusion of construction work in progress in the rate base.

The Consumer Advocate maintains the projected health cost increase was not a known and measurable expense. The Commission compared the health care cost in 1985 to 1988 to arrive at a yearly percentage increase. The test year figures were then adjusted to reflect the projected increase.

As this Court held in *Southern Bell Telephone v. Public Service Commission, supra,* adjustments for known and measurable changes in expenses may be necessary in order that the resulting rates reflect the actual rate base, net operating income, and cost of capital. The adjustments are within the discretion of the Commission and must be known and measurable within a degree of reasonable certainty. Absolute precision, however, is not required. *Michaelson v. New England Tel. & Tel. Co.,* 121 R.I. 722, 404 A.(2d) 799 (1979). We find the Commission's adjustment to health care expense was not an abuse of discretion.

The Consumer Advocate further argues that the CWIP was included in the rate base in error. The advocate's position is that the CWIP was also not known and measurable. We find there is evidence the CWIP was incurred during the test year and thus known and measurable.

Accordingly, we AFFIRM in part, REVERSE in part, and REMAND.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, JJ., concur.