493 S.E.2d 92

Philip S. PORTER, Consumer Advocate for the State of South Carolina, Appellant/Respondent,

v.

SOUTH CAROLINA PUBLIC SERVICE COMMISSION and Carolina Water Service, Inc., Defendants,

Of whom South Carolina Public Service Commission is Respondent,

and

Carolina Water Service, Inc., is Respondent/Appellant.

No. 24714.

Supreme Court of South Carolina.

Heard Sept. 17, 1997.

Decided Nov. 10, 1997.

224

226

Philip S. Porter, Nancy Vaughn Coombs, and Elliott F. Elam, S.C. Department of Consumer Affairs, Columbia, for appellant/respondent.

F. David Butler and Florence P. Belser, S.C. Public Service Commission, Columbia, for respondent.

William F. Austin and Richard L. Whitt, Austin, Lewis & Rogers, P.A., Columbia, for respondent/appellant.

MOORE, Justice:

This is a water and sewer rate case. We affirm in part, reverse in part, and remand for further findings.

## FACTS

In December 1993, respondent/appellant Carolina Water Service (Company) commenced this action seeking an increase in various fees. The total requested revenue increase was $804,492. By order dated May 31, 1994, respondent Public Service Commission (Commission) granted an increase of $664,542. The circuit court affirmed. Appellant (Advocate) appeals the calculation of rate base on several grounds and contests the amount allowed for Company's new account charge.[1]

## DISCUSSION

1. Capitalization percentage for operators' salaries

In determining rate base, the Commission used a test year of June 30, 1992, to June 30, 1993. The Commission reduced test year expenses for operators' salaries by a 5.74% capitalization percentage to reflect the amount of salary expense attributable to capital projects since expense for capital projects is not considered for rate-making purposes. Advocate contends the Commission should have used a higher capitalization percentage calculated by averaging the capitalization percentage for the test year and the previous two years.

We have approved the historical test year as a basis for calculating a utility's rate base as long as adjustments are made for any known and measurable out-of-period changes in expenses, revenues, and investments that would materially alter the rate base. *Hamm v. Southern Bell Tel. & Tel. Co.,* 302 S.C. 132, 394 S.E.2d 311 (1990); *Southern Bell Tel. & Tel. Co. v. Pub. Serv. Comm'n,* 270 S.C. 590, 244 S.E.2d 278 (1978). The test year is established to provide a basis for making the

---

1. Company cross-appeals on the ground Advocate's petition for judicial review was insufficient to bestow jurisdiction on the circuit court. We affirm pursuant to Rule 220(b), SCACR. *See Pringle v. Builders Transport,* 298 S.C. 494, 381 S.E.2d 731 (1989); *Smith v. S.C. Dept. of Social Services,* 284 S.C. 469, 327 S.E.2d 348 (1985).

most accurate forecast of the utility's rate base, reserves, and expenses in the near future when the prescribed rates are in effect. *Hamm v. S.C. Pub. Serv. Comm'n* 309 S.C. 282, 422 S.E.2d 110 (1992). Where an unusual situation exists resulting in test year figures that are atypical and thus do not indicate future trends, the Commission should adjust the test year data. *Id.*

In this case, the Commission found 5.74% accurately reflected the amount of time operators actually spent on capital projects during the test year. This finding is supported by the record. The Commission also found that although the amount of capital activity varied from year to year, the variation was not so great as to require normalization. Further, it rejected Advocate's proposed 8.85% (based on a three-year average of percentages) because this amount was not "significantly different" from the 5.74% used by the Commission.

We begin by noting the comparison between the test year percentage (5.74%) and the normalized percentage (8.85%) is not dispositive. The question is whether the amount for the test year is markedly different than that for other years, thereby indicating it is atypical. *Id.* The record indicates a 10.62% capitalization percentage for 1991 and 10.22% for 1992. These percentages are nearly 50% higher than the percentage for the test year and appear to indicate an atypical variation in the allowable expense for operators' salaries. Moreover, there is nothing in the record indicating the lower test year capitalization percentage is a more accurate predictor of Company's expenses.

Having said this, however, we note that an adjustment is required only if the variation in expense "materially alters" the rate base. *Hamm v. Southern Bell, supra.* According to the record, using the capitalization percentage of 10.22% or 10.62% from the previous years rather than 5.74% from the test year would result in a difference to the total rate base of approximately .3%. We conclude this amount does not represent a material alteration of the rate base. Accordingly, we affirm the Commission's finding that the test year capitalization percentage was appropriate.

## 2. Customer growth adjustment

■ In determining Company's rate base, the Commission increased test year revenue by a standardized per customer adjustment to reflect the impact of a projected number of new customers on Company's net operating income. Advocate complains this standardized per customer adjustment assumes an equal increase in expenses per customer that Company has failed to demonstrate.

Company's accountant, Patricia Cuddie, testified that certain expenses increase with a growth in customers, including the cost for electricity, chemicals, billing supplies, additions to plant, and increased staffing. The customer growth adjustment was calculated by multiplying the average annual increase in customers by the average amount of pro forma (adjusted) revenue generated per customer.[2]

■ Adjustments for known and measurable changes in expenses are within the discretion of the Commission. Absolute precision is not required so long as adjustments are "known and measurable within a degree of reasonable certainty." *Hamm v. S.C. Pub. Serv. Comm'n*, 309 S.C. at 291, 422 S.E.2d 110.

We find no abuse of discretion in averaging the amount of net income generated as a practical means of determining the adjustment for customer growth, especially since the actual amount of income generated for a particular customer is not a readily ascertainable amount. Employing the average net income generated by each customer results in an adjustment that is known and measurable within a degree of reasonable certainty since it reflects the average expense attributable to generating per customer income. Accordingly, we affirm this finding of the Commission.

### 3. Rate case expenses

In calculating rate base, the Commission allowed an adjustment to expense for Company's unrecovered rate-case expense incurred during two prior rate cases. The Commission had

---

2. The amount of revenue generated per customer is Company's total pro forma revenue generated at the rate in effect during the test year, divided by the number of customers.

previously approved these expenses when a prior rate increase was granted in May 1993, amortized over a three-year period. At the time of the hearing in this case, the May 1993 rate had been in effect for approximately one year. The unamortized amount of rate-case expense was $146,191 reflecting the remaining two years of unrecovered rate-case expense. Accordingly, the Commission allowed in this case an adjustment to expense for the two years of unamortized rate-case expense ($146,191) amortized over the next three years.[3]

██ Advocate contends allowing recovery of the unamortized rate-case expense results in retroactive rate-making.[4] We disagree.

██ Rate-making is a prospective rather than a retroactive process. *S.C. Elec. & Gas Co. v. Pub. Serv. Comm'n,* 275 S.C. 487, 272 S.E.2d 793 (1980). Retroactive rate-making is prohibited based on the general principle that those customers who use the service provided by the utility should pay for its production rather than requiring future rate payers to pay for past use. *Popowsky v. Pa. Pub. Util. Comm'n,* 164 Pa. Cmwlth. 338, 642 A.2d 648 (1994) (*Popowsky I* ).

██ There is an exception to this rule, however, for expenses deemed "extraordinary." An extraordinary expense is one that is unanticipated and non-recurring. *Popowsky I; see also Stewart v. Utah Pub. Serv. Comm'n,* 885 P.2d 759 (Utah 1994) (extraordinary and unforeseeable). Generally, amortizing an extraordinary expense incurred in the past does not result in retroactive rate-making. *Popowsky v. Pa. Pub. Util. Comm'n,* 695 A.2d 448 (Pa.Commnw.Ct.1997) (*Popowsky II* ). It is common practice to include the amount of unamortized costs from prior rate cases as an amortized expense in calculating rate base. *See Providence Gas Co. v. Malachowski,* 656 A.2d 949 (R.I.1995). Ideally the amortization period matches the expected interval between rate cases. *Id.*

3. In other words, one-third of the $146,191 was allowed as an expense in calculating the rate base in this case.

4. Advocate contends generally that rate-case expense should be normalized rather than amortized because it has become an ordinary cost of doing business. Advocate, however, does not challenge the amortization of *current* rate case expense that was also approved in this case.

The Commission found a three-year amortization period usually represents the time period in which utilities file for rate increases. Rate-case expense is therefore expected to be fully recovered before the next rate case. Accordingly, the remaining unamortized rate-case expense, previously approved but unrecovered, is unanticipated and non-recurring and qualifies as an extraordinary expense. Amortization of this expense does not constitute retroactive rate-making and we affirm this finding of the Commission.

#### 4. Deferred charges

The Commission adjusted test year expense by allowing certain deferred charges for expenses actually incurred before the test year. These charges include such expenses as tank maintenance and press washing sewer mains that were incurred between 1988 and 1993. Advocate contends some of these expenses are not extraordinary and therefore do not qualify for the exception to retroactive treatment.[5] We agree.

Company accountant Cuddie testified that "many of [the deferred charges] will continue to occur year after year. For example, tank paintings are routine and required at regular intervals. In addition, main breaks and major repairs also occur each year." The Commission approved these deferred charges finding:

> As painting tanks and repairs to mains are expenses which must be paid for when the work is completed but the useful life of which is for a period longer than a given test year, the Commission has allowed the treatment of these expenses as deferred charges with the recovery spread over several years.

The expenses described by witness Cuddie are routine and required at regular intervals. They therefore do not qualify as extraordinary because they are not unanticipated or non-recurring. *See Phila. Elec. Co. v. Pa. Pub. Util. Comm'n*, 93 Pa.Cmwlth. 410, 502 A.2d 722 (1985) (costs that recur as part of maintaining the existing facility are not extraordinary).

---

5. Advocate does not challenge deferred charges relating to Hurricane Hugo which would properly qualify as extraordinary expenses. *See Popowsky I, supra* (weather-related expenses qualify as extraordinary for retroactive treatment).

The Commission improperly allowed a retroactive rather than prospective recovery of these deferred charges. Since these types of expenses are recurring and anticipated, they should be considered *prospectively* as known and measurable adjustments to test year expenses. *Southern Bell Tel. & Tel. Co. v. Pub. Serv. Comm'n, supra* (Commission should make adjustments for known and measurable changes in expenses occurring *after* the test year).

Accordingly, we remand for the Commission to remove from the rate base calculation any deferred charges that are not unanticipated and non-recurring.

### 5. Cash working capital

In determining an allowance for cash working capital to be included in the rate base, the Commission used per book amounts of operating expenses to adjust cash working capital. Advocate contends for consistency the Commission should have used pro forma amounts of operating expenses for this adjustment since pro forma adjustments were made to the operating and maintenance expenses for purposes of determining rate base. The Commission found the per book amounts were known figures and therefore appropriate.

We have examined the figures found in the record and determine this issue to be without merit. The adjustment to cash working capital applied by the Commission is $30,695. The adjustment proposed by Advocate is $23,987, which would result in a difference in rate base of $6,708. This difference represents .06% of the total rate base.

The Commission has wide latitude to determine its methodology in rate-setting and there is no abuse of discretion where substantial evidence supports the finding of a just and reasonable rate. *Heater of Seabrook, Inc. v. Pub. Serv. Comm'n,* 324 S.C. 56, 478 S.E.2d 826 (1996). Here, the Commission based its reduction of cash working capital on known amounts supported by the record. Further, a rate base calculation employing either methodology is substantially the same. We find no abuse of discretion. The finding of the Commission regarding cash working capital is affirmed.

### 6.  New account charge

Company sought a $1.00 increase in the $27.00 fee it charges new customers to set up an account. In support, Company submitted an itemized list of its costs in setting up a new account. Advocate responded by pointing to the fact that $14.83 of the total $28.82 in costs was related to turning off service for an existing customer and not setting up new service. The Commission agreed with Advocate that these costs were not properly attributable to a new account charge and denied Company's request for an increase. Advocate contends the Commission erred in refusing Advocate's request that the new account charge be reduced to $14.00, the amount of costs supported by the evidence.

The Commission refused to entertain Advocate's request for a reduction because the $27.00 fee had been previously approved without objection in a May 1993 rate case. Company argues in support of the Commission's decision that reconsideration of a pre-approved fee would be retroactive rate-making.

In *S.C. Elec. & Gas Co. v. Pub. Serv. Comm'n, supra,* we held the Commission could not order a refund for excess revenue collected under a past-approved rate because this would violate the rule against retroactive rate-making.[6] We agree with Advocate, however, there is no violation of the rule against retroactive rate-making where the reduction sought is *prospective only* as in this case.

The Commission is statutorily charged with the authority to supervise and regulate all public utilities and fix just and reasonable rates. S.C.Code §§ 58–3–140 (Supp.1996) and –5–210 (1976). Further, S.C.Code Ann. § 58–5–290 (1976) specifically provides:

§ 58–5–290.  **Correction by Commission of improper rates and the like.**

Whenever the Commission shall find, after hearing, that the rates, fares, tolls, rentals [or] charges ... however or whensoever they shall have theretofore been fixed or estab-

---

6. We held the Commission should instead consider extraordinary amounts generated when setting the next rate.

lished ... are unjust [or] unreasonable ... the Commission shall, subject to review by the courts as herein provided, determine the just and reasonable fares, tolls, rentals [or] charges ... to be thereafter observed and enforced and shall fix them by order as herein provided.

Clearly, under this statute, the Commission has the continuing power to prospectively correct or reduce a previously approved charge. In conjunction with this power, S.C.Code Ann. § 58-5-300 (1976) provides:

> § 58-5-300. All facts may be considered in making correction.
>
> In connection with a determination under § 58-5-290 the Commission may consider all facts which in its judgment have a bearing upon a proper determination of the question, although not set forth in the complaint or application and not within the allegations contained therein.

Accordingly, the fact that this matter came before the Commission pursuant to Company's request for an *increase* in the new account charge does not impact the Commission's power to consider all the facts before it and order a reduction in this charge.[7]

In rejecting Company's request for an increase and Advocate's countervailing request for a decrease, the Commission made no specific finding that the existing $27.00 new account charge was supported by the evidence. Accordingly, we remand for the Commission to make findings regarding the appropriate amount that should be allowed for the new account charge.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

FINNEY, C.J., TOAL and WALLER, JJ., and GEORGE T. GREGORY, Jr., Acting Associate Justice, concur.

---

7. Of course, any reduction is subject to the requirement that the utility receive notice and an opportunity to be heard. *See Stono River Envtl. Protection Ass'n v. S.C. Dept. of Health and Envtl. Control,* 305 S.C. 90, 406 S.E.2d 340 (1991).