# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**January 10, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**

CONSUMER ADVOCATE )
DIVISION, on Behalf of Tennessee )
Consumers and the ATTORNEY )
GENERAL OF TENNESSEE, )
)
      Petitioner/Appellant, )  Appeal No.
)  M1999-02151-COA-R12-CV
VS. )
)  Tennessee Regulatory Authority
TENNESSEE REGULATORY )  No. 95-02614
AUTHORITY, )
)
      Respondent/Appellee. )

APPEALED FROM THE TENNESSEE REGULATORY AUTHORITY
AT NASHVILLE, TENNESSEE

COMMISSIONERS
MELVIN J. MALONE, LYNN GREER AND SARA KYLE

FOR THE APPELLANT:

PAUL G. SUMMERS
Attorney General & Reporter

MICHAEL E. MOORE
Solicitor General

L. VINCENT WILLIAMS
Assistant Attorney General
Nashville, Tennessee

FOR THE APPELLEE
TENNESSEE REGULATORY
AUTHORITY:

J. RICHARD COLLIER
H. EDWARD PHILLIPS
Tennessee Regulatory Authority
Nashville, Tennessee

FOR THE APPELLEE
BELLSOUTH
TELECOMMUNICATIONS,
INC.:

GUY M. HICKS
PATRICK W. TURNER
Nashville, Tennessee

BENNETT L. ROSS
Atlanta, Georgia

AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

# O P I N I O N

After this court remanded a prior appeal saying that "the Tennessee Public Service Commission . . . should have approved BellSouth's application for a price regulation plan based on BellSouth's rates existing on June 6, 1995", the Tennessee Regulatory Authority entered an order approving a price regulation plan based on the data used in the 1995 application. The State Attorney General's Consumer Advocate Division levels a broad attack on the order, asserting that this court's prior order did not mandate the result below, and that the order violates state and federal law. We hold that the Authority was not required by our prior order to take the action it took but that the order was within the Authority's discretion. Therefore, we affirm.

## I.

We refer to our prior opinion in *BellSouth Telecommunications v. Greer*, 972 S.W.2d 663 (Tenn. Ct. App. 1997) for the facts leading up to the approval of price regulation plans for local telephone companies. As that opinion recites, BellSouth applied for a price regulation plan on June 20, 1995 and an audit of BellSouth's Form PSC-3.01 report of March 31, 1995 showed a rate of return within the range set by the Public Service Commission's order in 1993. Nevertheless, the Commission's staff recommended some adjustments to the 3.01 report, and the Commission ordered BellSouth to reduce its rates by $56.285 million.

On appeal this court held that the Commission did not have the power to adjust the figures in the 3.01 report, and we remanded the case "to the Tennessee Regulatory Authority with directions to approve BellSouth's application for a price regulation plan." 972 S.W.2d at 682. BellSouth filed a petition to rehear seeking an order from this court that the price regulation plan became effective on March 1, 1995. We declined the invitation and left it up to the agency "to carry out its task in a manner consistent with its statutory authority." 972 S.W.2d at 683.

On remand BellSouth contended that this court's opinion required an immediate order approving a price regulation plan and moved for a plan effective as of October 1, 1995. BellSouth conceded that the freeze on basic rates and call waiting services should be extended to August 1, 2002 and that the indexing for annual adjustments for basic and non-basic rates should begin on August 1, 1998. The Consumer Advocate Division moved to start over. The Regulatory Authority approved BellSouth's motion with one exception. The annual adjustments for basic and non-basic services will be calculated from December 1, 1998.

## II.

### The Scope of the Remand

The Consumer Advocate Division asserts that the Regulatory Authority erred in concluding that this court's opinion required it to take the action it took. A remand may take one of several forms. It may dictate the

course of further proceedings, *Hoover v. Metropolitan Board of Zoning Appeals*, 955 S.W.2d 52 (Tenn. Ct. App. 1997), it may be made for a specific purpose. *Mathis v. Campbell*, 117 S.W.2d 764 (Tenn. Ct. App. 1938), or it may be open and general. Here, however, we agree that this court's remand did not require the Authority to approve, without qualification or further inquiry, BellSouth's 1995 application. On the petition to rehear in *Greer*, we made the following observations with respect to BellSouth's request for a holding that its price regulation plan became effective on March 1, 1996:

> Our October 1, 1997 opinion focused on the procedure employed by the Tennessee Public Service Commission to consider and act on BellSouth's application for a price regulation plan. Rather than focusing on the substance or merits of the Commission's decision, we held that the procedure the Commission followed did not comply with Tenn. Code Ann. § 65-5-209. Accordingly, we vacated the Commission's orders and remanded the case to its successor for further proceedings consistent with the requirements of Tenn. Code Ann. § 65-5-209.

> \*     \*     \*

> The doctrine of separation of powers counsels the courts to avoid requiring an administrative agency to take a particular action except in the most extraordinary circumstances. We should decline, for constitutional and practical reasons, to shoulder an agency's responsibilities. Thus, the goal of a remand in cases of this sort should generally be to require the agency to carry out its task in a manner consistent with its statutory authority. *See Hoover, Inc. v. Metropolitan Bd. Of Zoning Appeals*, 955 S.W.2d 52, 55 (Tenn. Ct. App. 1997).

> Throughout these proceedings, BellSouth consistently asserted that the procedure followed by the Commission was not authorized by Tenn. Code Ann. § 65-5-209 and requested the courts to require the regulators to make their decisions in accordance with Tenn. Code Ann. § 65-5-209. Our October 1, 1997 opinion settles the dispute concerning what Tenn. Code Ann. § 65-5-209 requires. Now it falls

upon the Tennessee Regulatory Authority to consider BellSouth's application for a price regulation plan in accordance with Tenn. Code Ann. § 65-5-209.

The key to the scope of the remand is contained in the last quoted paragraph. We resolved one question about price regulation. We left it to the Authority to consider BellSouth's application in accordance with Tenn. Code Ann. § 65-5-209 and to "carry out its task in a manner consistent with its statutory authority." Therefore, the Authority was not under a mandate to take any particular action. It could not, however, adjust the actual results on BellSouth's 3.01 report.

## III.

### The Regulatory Authority's Decision

Our conclusion that the Authority was not compelled to take the action it took opens up the question of whether it was compelled to take some other action. The Consumer Advocate Division attacks the Agency's action on several fronts.

### A. The 3.01 Audit

The Consumer Advocate Division asserts that the Authority did not have the assurance that BellSouth's March 1995 3.01 report was in compliance with generally accepted accounting principles. *See* Tenn. Code Ann. § 65-5-209(j). The Agency staff gave a "negative" assurance, meaning that it did not

make that determination itself but relied on the company's internal controls and independent auditors for the assurance.

After initially making the same arguments in the prior proceeding, the Consumer Advocate Division dropped its objection and did not pursue it on appeal – despite a finding by the PSC that the 3.01 report accurately reflected BellSouth's earned rate of return according to generally accepted accounting principles. By failing to challenge that finding on appeal, the Consumer Advocate Division waived any objection to it, *Lewter v. O'Connor Management, Inc.*, 886 S.W.2d 253 (Tenn. Ct. App. 1994), and it is now the law of the case. *See Ladd v. Honda Motor Co.*, 939 S.W.2d 83 (Tenn. Ct. App. 1996).

In addition, in the prior appeal the Consumer Advocate Division actually defended the PSC's action, because it resulted in a sizeable reduction in rates. Having taken that position, the Division must confront the rule that a litigant is required to act consistently throughout the litigation. *Fidelity-Phenix Fire Ins. Co. v. Jackson*, 181 S.W.2d 625 (Tenn. 1944). Other courts have talked in terms of judicial estoppel. *See Bubis v. Blackman*, 435 S.W.2d 492 (Tenn. Ct. App. 1968); *Stamper v. Venable*, 97 S.W. 812 (Tenn. 1906). Thus, we conclude that the objections to the 3.01 audit cannot be pursued on this appeal.

**B. Federal Preemption**

The Consumer Advocate Division devotes a lengthy part of its appellate brief to an argument that the preemptive effect of the Federal

Telecommunications Act of 1966 (which took pay phones out of regulated operations) was a compelling reason to reopen the case below. In the prior appeal AT&T argued that federal preemption was a reason to deny price regulation and remand the case to the Regulatory Authority for consideration of that issue. We rejected AT&T's argument then, in part because some of the issues were already before the Authority in separate proceedings involving AT&T and BellSouth. We said, "This type of proceeding, and others like it, provide the parties with an appropriate forum to air out and resolve more clearly defined issues concerning the possible preemptive effect of the specific provisions of the Telecommunications Act of 1966 . . . ."

In this appeal BellSouth points out that the changes in payphone regulation are already the subject of a separate proceeding pending before the Authority. We think our decision in *Greer* applies with equal force to this issue. We are not convinced that a federal law prohibiting pay phones from being subsidized by the company's rate-payers affects BellSouth's price regulation plan, but the pending proceeding can determine if BellSouth's rates should be adjusted to reflect the changes in the law.

### C. Retroactive Ratemaking

The Consumer Advocate Division asserts that the Authority engaged in retroactive ratemaking by approving BellSouth's price regulation plan effective October 1, 1995. *See South Central Bell v. Tennessee Public Service Commission*, 675 S.W.2d 718 (Tenn. Ct. App. 1984). We disagree.

The Regulatory Authority's order did not attempt to change rates retroactively. The rates had been in effect for some time before the June 6, 1995 application for price regulation. The whole thrust of the Consumer Advocate Division's four year effort has been to convene a contested case hearing for the purpose of setting new rates. The only rate changes under the Authority's December 1998 order will be prospective. Annual rate adjustments for nonbasic services are to be calculated from December 1, 1998, and there can be no increase in the rates for basic services or call waiting until December 1, 2002. By making the order prospective only, the Authority avoided the charge that future ratepayers would "pay for past use," which is the essence of retroactive ratemaking. *Porter v. South Carolina Public Service Comm'n*, 493 S.E.2d 92 (S.C. 1997). The order also eliminated BellSouth's right to seek an increase in nonbasic services in 1996, 1997, and 1998, which it would have had if the Public Service Commission had acted lawfully in 1995. As we view it, the Authority's order places BellSouth as nearly as possible in the position they would have been in except for the Commission's error. That was the goal of the Authority on remand. *See Hoover, Inc. v. Metropolitan Board of Zoning Appeals*, 955 S.W.2d 52 (Tenn. App. 1997).

## IV.

"The sole concern of the courts, at each stage of appellate review, it to determine whether the [Regulatory Authority's] action on the matters raised by the application meet the requirements of the law." *CF Industries v. Tenn.*

*Public Service Commission*, 599 S.W.2d 536 at 544 (Tenn. 1980). We are satisfied that the Authority acted within the scope of its powers.

We affirm the Authority's order and remand the cause to the Authority for any further proceedings that are necessary. Tax the costs on appeal to the Consumer Advocate Division.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH., JR., JUDGE


_____
WILLIAM C. CAIN, JUDGE