568 S.E.2d 365

TOTAL ENVIRONMENTAL SOLUTIONS, INC., Respondent,

v.

SOUTH CAROLINA PUBLIC SERVICE COMMISSION, Foxwood Hills Property Owners Association, Steven W. Hamm, Consumer Advocate for the State of South Carolina, and Ernest Campbell,

of whom South Carolina Public Service Commission is Respondent,

and

Foxwood Hills Property Owners Association, Inc. is Appellant.

Total Environmental Solutions, Inc., Respondent,

v.

Foxwood Hills Property Owners Association, the South Carolina Department of Consumer Affairs, Ernest Campbell, and South Carolina Public Service Commission,

of whom Foxwood Hills Property Owners Association is Appellant,

and

South Carolina Public Service Commission is Respondent.

Foxwood Hills Property Owners Association, Appellant,

v.

South Carolina Public Service Commission, Total Environmental Solutions, Inc., and Steven W. Hamm, Consumer Advocate for South Carolina,

of whom South Carolina Public Service Commission

and

Total Environmental Solutions, Inc. are Respondents.

No. 25509.

Supreme Court of South Carolina.

Heard May 30, 2002.

Decided Aug. 5, 2002.

176

Henry Asby Fulmer, III, of Fulmer Law Firm, of Summerville, for Appellant.

Fred David Butler, of Columbia, for Respondent South Carolina Public Service Commission.

John F. Beach and John J. Pringle, Jr., of Beach Law Firm, of Columbia, for Respondent Total Environmental Solutions, Inc.

Justice BURNETT.

This case is before the Court on cross-appeals from consolidated cases arising from the circuit court's final order denying a utility company's appeal from the South Carolina Public Service Commission's ("Commission") Order. We affirm.

## FACTS

Mountain Bay Estates Utility Company, Inc. ("Mountain Bay") a company providing water and sewer services to the Foxwood Hills resort community in Oconee County, applied for a rate increase with the Commission in January 1994. Mountain Bay was established as a private utility to serve Mountain Bay Estates, later Foxwood Hills, a private residential subdivision located on Lake Hartwell. Foxwood Corporation ("Foxwood"), the subdivision developer, owned 100% of Mountain Bay's stock.[1]

At the rate hearing, Mountain Bay articulated three reasons for the increase: 1) rising cost of environmental regulatory compliance since Mountain Bay's last rate request in 1977; 2) general increase in inflation since 1977; and 3) Mountain Bay charged a rate not reflective of the true market rate in order to spur development of Foxwood, an interest it no longer had since being sold to Johnson Properties, Inc. ("Johnson"). Most of the testimony at the hearing centered upon the third reason, particularly whether lot availability fees should be counted by the Commission as operating revenue to Mountain

---

1. Respondent Total Environmental Solutions, Inc. ("TESI") purchased all of the assets of Mountain Bay as part of a resolution of bankruptcy proceedings involving Mountain Bay's subsequent parent company, Johnson Properties, Inc. This Court substituted TESI for Mountain Bay as Respondent.

Bay because of the relationship between the utility and Fox-wood.

In 1977, the Commission approved Mountain Bays' request to charge a rate up to $8 per month for water and sewer services. As Mountain Bay was a subsidiary of Foxwood, it never charged more than $5 per month in order to increase development of the subdivision. As a result, the utility operated at a $137,568.59 loss for the test year ending June 30, 1993.

Foxwood charged each purchaser of a lot in the subdivision a yearly "availability fee" of $60 payable to the developer until the purchaser became a customer and connected to Mountain Bay. The fee was designed to reimburse Foxwood for its capital costs of building the initial water and sewer infrastructure. Once the purchaser connected to Mountain Bay's utility system and became a utility customer, the purchaser was no longer required to pay the availability fee. Under the terms of the purchasing agreement, Foxwood, not Mountain Bay, would bill and collect the fee. The amount of the availability fees totaled $171,947.04 for the test year.

While Foxwood mistakenly placed the availability fees on Mountain Bay's books for accounting purposes, the evidence presented at the hearing showed the lot owners were contractually obligated to pay the fees to Foxwood, and the fees were not used for utility purposes. The Commission's accountant testified he did not recognize the availability fee as revenue to Mountain Bay because it was not received directly by the utility and was not being collected for utility purposes. The Commission's accountant found the availability fees were not "ongoing revenues of the utility." The accountant testified if Mountain Bay did collect the availability fees, they should not be treated as operating revenue, but as a deduction from the rate base, the accounting equivalent to contributions in aid of construction.

Johnson purchased all Mountain Bay's stock in July 1993, a month after the test year ended. The stock purchase was not approved by the Commission. In the stock purchase agreement, Foxwood promised to assign the availability fees to

Johnson within two years of the closing date or July 1995. Foxwood retained the right under its sole discretion to modify or terminate the availability fees on a case-by-case basis until that date.

Further, Foxwood had no obligation to include availability fees in any future lot sales agreements. The availability fees assigned to Johnson were not required to be used to benefit Mountain Bay, but could be used by Johnson as income for any purpose. If Johnson sold Mountain Bay's stock to another entity, it was not required to transfer the availability fees or assign its rights to the other entity.

After the hearing, the Commission denied the rate increase. Central to the Commission's denial was Commission's treatment of the availability fees as operating revenue to Mountain Bay. Additionally, the Commission concluded Johnson Properties would not have bought Mountain Bay unless it "either continued to have the use of the availability fees and/or it received a rate increase. Clearly, availability fees were used as consideration in the sale of the utility's stock." The Commission further concluded Mountain Bay was not required to obtain Commission approval prior to the transfer of its capital stock.

Mountain Bay appealed the denial of the rate increase because the Commission improperly attributed the availability fee as operating revenue to the utility. The Foxwood Hills Property Owners Association, Inc. ("POA") also appealed claiming the Commission erred in concluding Mountain Bay did not need permission to transfer 100% of its capital stock.

The circuit court concluded the Commission erred in attributing the availability fees to Mountain Bay, and the Commission was not required to approve the stock transfer.[2]

---

2. Following its decision the circuit court remanded the case to the Commission to again consider Mountain Bay's rate request based on the existing record and excluding the availability fees as operating revenue.

On remand Commission approved rates for Mountain Bay which provided a 3.86% operating margin. The circuit court upheld the Commission's determination.

## ISSUES

I. Did the South Carolina Public Service Commission err in ruling lot availability fees should be treated as Mountain Bay operating revenue?

II. Did the South Carolina Public Service Commission err in ruling it was not required to approve the July 1993 stock transfer between Foxwood Corporation and Johnson Properties?

## DISCUSSION

This Court is deferential in reviewing decisions by the Commission and will affirm those decisions supported by substantial evidence. *Heater of Seabrook, Inc. v. Public Serv. Comm'n of South Carolina,* 324 S.C. 56, 478 S.E.2d 826 (1996). This Court refrains from substituting its judgment for that of the Commission's where there is room for difference of intelligent opinion. *Id.* The Commission's findings are presumptively correct requiring the party challenging the Commission's order to bear the burden of showing the decision is "clearly erroneous in view of the substantial evidence on the whole record." *Id.* at 60, 478 S.E.2d at 828 (quoting *Patton v. South Carolina Pub. Serv. Comm'n,* 280 S.C. 288, 290–91, 312 S.E.2d 257, 259 (1984)).

## I

### Availability Fees

The Commission decision to include availability fees as operating revenue for Mountain Bay is based on the relationship between the utility company and the developer, Foxwood. The Commission acknowledges availability fees "are normally the result of a contract between the lot owner and the developer," but insists "where the developer and the utility are the same entity or closely related entities, the Commission may choose to apply the fees to the utility in some manner, especially when such fees appear on the utility's books."

The Commission avers Mountain Bay historically undercharged customers to benefit the developer, Foxwood, which, in turn, supported the utility "if not through availability fees, then through other funding from the developer." The Com-

mission argues that rationale combined with the fact Johnson Properties was not required to use availability fees to benefit Mountain Bay, required it to find the proposed rate increase was not a function of increased operating costs but of new ownership and accounting treatment of the availability fees. The Commission further concluded the availability fees were used as consideration in the sale of Mountain Bay's stock, "and that by arranging the terms of the contract in such a way as to limit the utility's access to revenues, the developer and Johnson Properties utilized the stock transaction to the benefit of Johnson Properties and to the disadvantage of Mountain Bay's ratepayers."

The Commission allocated availability fees to Mountain Bay as operating revenue because it considered current customers and lot owners inequitably treated. We disagree.

In *Heater of Seabrook, supra,* we reviewed a similar decision by the Commission to deviate from past practices and treat availability fees as operating revenues. In that case, Heater applied for a rate increase although it received annual availability fees of $66,640. We wrote: "We do not hold that availability fees can never be included as operating revenues ... [i]n this particular case, however, there was no substantial evidence supporting Commission's decision regarding treatment of availability fees." *Id.* at 63, 478 S.E.2d at 829.

■ The present case is factually dissimilar from *Heater of Seabrook* because the utility in *Heater of Seabrook* directly received the availability fee from customers while Mountain Bay does not. The Commission may only regulate a "rate" which:

> means and includes every compensation, charge, toll, rental, classification, or **availability fee,** or any of them, including tap fee, or other non-recurring charges **demanded, observed, charged, or collected *by any utility*** for any service offered by it to the public, and any rules, regulations, practices, or contracts affecting any such compensation, charge, toll, rental, classification, or availability fee.

S.C. Reg. 103–502.10 (emphasis added); *see also* S.C. Reg. 103–702.13.

While the term "availability fee" does appear in the regulation, it is modified by the phrase "demanded, observed,

charged, or collected by any utility." *See* S.C. Reg. 103–502.10. Availability fees may be regulated as "rates" in cases such as *Heater of Seabrook* where the utility itself collected the fees. However, in the present case, availability fees were charged, collected and used by Foxwood, the developer, and not Mountain Bay, the utility.

The Commission asserts the distinction is without a difference because Foxwood used the availability fees to subsidize Mountain Bay. The evidence does not support this rationale. Mountain Bay testified Foxwood did not provide availability fees to it. The Commission's own staff concluded attributing the fees to Mountain Bay as operating revenue was improper and not supported by the evidence. The Commission, therefore, lacks jurisdiction to regulate availability fees where no evidence exists Mountain Bay collected or directly benefitted from them.

The Commission next argues it has jurisdiction over the fees in the present case because Foxwood used those fees to indirectly benefit Mountain Bay. The Commission relies on the commercial relationship between the two companies to argue Foxwood necessarily transferred the availability fees to Mountain Bay in exchange for the utility maintaining lower than necessary utility rates.

While the record demonstrates Mountain Bay undercharged its customers to help development, testimony by both Mountain Bay and the Commission's staff indicate the availability fees were not operating revenue to the utility. The staff report removed the fees as operating revenue for Mountain Bay because the fees did not benefit the utility. Additionally, a Commission staffer testified that if the fees were going to the utility, the fees should be recorded as additions to Mountain Bay's rate base, and deducted from any future utility plant additions.

There is no substantial evidence showing Foxwood used availability fees to subsidize Mountain Bay. The Commission lacks jurisdiction to regulate availability fees in such instances.

Assuming *arguendo* the Commission is correct in concluding Foxwood subsidized Mountain Bay through transferring availability fees, the Commission's rationale is no longer applicable in light of Johnson Properties' purchase of Mountain Bay's

stock. Pursuant to the stock sale contract, Foxwood assigned to Johnson its right to receive any availability fees being paid through July 1995, two years after the sale. Even after July 1995, the fees would inure directly to Johnson to be used for any purpose designated by Johnson, not Mountain Bay.

The Commission believed Mountain Bay would benefit from the fees through Johnson Property after assuming the fees served as consideration in the Foxwood to Johnson sale. No evidence supports the Commission's finding.

Therefore, the circuit court correctly held the Commission erred in attributing the availability fees to Mountain Bay.[3]

## II

### Stock Sale

■ POA argues Foxwood should have received Commission approval before selling 100% of Mountain Bay's stock to Johnson. We disagree.

Commission Regulations 103–504 and 103–704, at the time of the Foxwood to Johnson sale, provided: "No existing public utility ... shall hereafter sell ... any utility system ... without first obtaining from the Commission a certificate that the sale or acquisition is in the public interest." S.C. Reg. 103–504 and S.C. Reg. 103–704.

The circuit court found the "public utility" is Mountain Bay, a South Carolina corporation which has continuously provided utility service since the 1970's. Both the circuit court and Commission read the regulation to require Commission approval only in cases where the public utility sells its assets or utility system to another, not for the transfer of stock.

POA argues the Commission should have read the regulation to require its approval where stock transactions result in a change in control of the utility. Both the Commission and the circuit court refused to read the "change of control" requirement into the regulation.

---

3. Although the facts of this case do not support Commission's attributing availability fees to the utility, "[w]e do not hold that availability fees can never be included as operating revenues." *Heater of Seabrook,* 324 S.C. at 63, 478 S.E.2d at 829.

The Commission's reading is supported by the wording of the regulation. *See Byerly Hosp. v. South Carolina State Health and Human Servs. Fin. Comm'n,* 319 S.C. 225, 460 S.E.2d 383 (1995) (great deference is given to an agency's interpretation of regulations where it has particular expertise). Adopting POA's interpretation would undermine the operations of utilities who have effectuated stock sales without Commission approval, negatively affecting Commission-approved rate increases/decreases.

We agree with the Commission's and circuit court's reading of the regulation.[4]

## CONCLUSION

For the foregoing reasons we **AFFIRM** the order of the court below.

MOORE, A.C.J., WALLER and PLEICONES, JJ., and Acting Justice GEORGE T. GREGORY, JR., concur.

---

**4.** The Commission has since amended both regulations, with the approval of the Legislature, to specifically grant itself the authority to approve the transfer of water/sewer utilities stock. *See* S.C. Reg. 103–504 (2001) and S.C. Reg. 103–704 (2001).